ORRILLA FOSTER AND LYMAN A. GALE, TRUSTEE, v.
WILLIAM FOSTER, SAMUEL FOSTER, A. M. FOS-
TER, GEO. KIBBEE, CHESTINA A. KIBBEE, J.
& V. M. HART, J. H. & O. WARREN, AND L.
M. WARREN.*

[IN CHANCERY.]

*Divorce. Alimony. Fraudulent Conveyance. Lien. Fore-
closure of. Answer. R. L. s. 2383.*

1. The court on granting a divorce and alimony has power to charge the
   alimony a lien on the libellee's real estate; and if so charged, such lien
   may be foreclosed in chancery.
2. The lien will attach to the real estate which the libellee has fraudulently
   conveyed after the cause of divorce existed and just before the libel
   was brought and injunction served, such conveyance having been made
   in contemplation that alimony might be granted, without consideration
   and with the fraudulent intent of preventing its payment; and it is
   immaterial whether the grantees were aware of such intent.
3. Within the meaning of the statute against fraudulent conveyances, the
   libellant, before the divorce was granted, stood in the relation of a
   creditor to her husband, having an inchoate right of payment of such
   alimony as should be granted.
4. The conveyances cannot be sustained on the ground that the libellee
   retained property sufficient to support himself and family. He con-
   veyed $22,000 worth of real estate to his children by a former wife,
   retaining only $10,630, composed mostly of notes, and placed these in his
   son's hands for collection, as the court thought to avoid payment of the
   alimony. The provisions were not reasonable, and were dispropor-
   tionate to the libellee's means in view of his debts and situation.

*Heard, May Term, 1883.

Foster *v.* Foster.

5. The court in its discretion could decree the alimony to be paid in money, though the bill prayed that it be satisfied out of the real estate.

6. There was no necessity to levy an execution upon the lands.

7. There was no embarrassment from the fact that part of the alimony was for the benefit of the children.

8. In equity a conveyance may be impeached to a partial extent as being voluntary, and, if not fraudulent in fact, be sustained to the extent of the consideration; and the court applied this rule to one piece of land on which the libellee had a mortgage, and $400 had been paid on it several years before by the grantee's husband.

9. Answer. An answer in chancery averring facts on information and belief is not evidence of such facts.

Bill in Chancery. Heard on bill, supplemental bill, answer, traverse, and testimony, March Term, 1882. Redfield, chancellor, decreed:

"That the cause be referred to a master to ascertain the amount now due and to grow due on the amounts decreed to the children of the oratrix, for whom the said Lyman A. Gale is guardian; also the sum due the oratrix on the decree of divorce and alimony and to grow due hereafter; and that Joel Foster, Jr., the trustee, be decreed to convert the notes and securities in his hands into money as soon as may be, and pay the same to the guardian of the children of the oratrix according to said decree, and to the amount of said decree if the funds shall be sufficient, and, if more than sufficient, to pay the balance to the oratrix on her alimony aforesaid. And if the funds in the hands of said Joel Foster, Jr., are insufficient to pay the sum due to the children aforesaid, the balance left unpaid is hereby declared a lien on the farm in Hardwick, Vt., deeded to Adeline M. Foster by William Foster, January 20, 1877, on which the bill and injunction in this case was served by recording said injunction and bill in the town clerk's office in said Hardwick before the said Adeline had notice of the deed to her and had accepted the same; and if the said Adeline M. Foster and her husband do not pay the balance due within one year after the same falls due, and what is now due, if anything, by the first day of January next, and in case of failure to pay as aforesaid the said Adeline Foster and her husband, the said Lorenzo Warren, shall be foreclosed from all right or equity of redemption in said farm, and the same

shall be held and disposed of by the orator as the guardian of said children in fee simple.

And it is further ordered that the oratrix have a decree against the defendants for the payment of one thousand dollars now due to her on the first day of December next, with the cost of this suit, and the balance now due by the first day of March next, and all sums to grow due within one year after the same falls due, with interest on all of said sums of money, and, in default thereof, that the defendants shall be forever foreclosed of and from all the lands and real estate deeded by the defendant, William Foster, to his children on the 20th day of January, A. D. 1877, and described in this bill."

The said Gale was appointed guardian of the minor children. The bill was brought to have set aside certain conveyances of real estate alleged to have been fraudulently made by the said William Foster on or about the time the oratrix commenced divorce proceedings against him, and to recover alimony. The oratrix had filed her petition for divorce, January 20th, 1877; and on the same day an injunction was issued, and read in the hearing of the said William, enjoining him from conveying any of his real estate. The bill alleged that the causes for divorce had existed for a long time prior to the said 20th day of January, and that the said William and the grantees in the several deeds —his children by a former marriage—had fraudulently combined to cheat the oratrix out of all alimony that might be decreed her by the court. Nearly all the conveyances were made on the said January 20th. The oratrix obtained a decree for divorce at the March Term, 1878, and $10,000 ordered to be paid as alimony —$5,000 for the oratrix and $5,000 for the two children. The said William neglected to pay the amount decreed; executions were issued, and returned unsatisfied. The bill prayed:

"Your orator and oratrix pray that the said several conveyances made by the said William Foster to his children on or about the 20th day of January, 1877, above set forth, be vacated and set aside, and that the defendants be ordered to pay to your orator and oratrix the several sums mentioned and set forth in

the two executions above mentioned and the interest thereon by some short day to be fixed by the court, or that the defendants be forever foreclosed from all equity of redeeming said premises, or that the court will order sufficient of said real estate be sold at auction to pay the several sums aforesaid, with the cost of this process, and for such other and further relief in the premises as to the court shall seem meet, and for their reasonable costs."

An amended bill was filed at the March Term, 1881, stating that the said William Foster, having failed to comply with the order of the court as to paying the alimony, that the oratrix brought her petition at the March Term, 1879, asking that said William be punished for contempt; that the court ordered said Foster to be committed to close jail, and be kept there until he performed the order of the court, if he failed to pay a certain amount within sixty days; that the result of this order was that the said William transferred to Joel Foster, Jr., who had been appointed trustee, certain notes, mortgages, and other property towards paying the alimony. The court afterwards struck out that part of the order directing him to be confined in jail, on said William's representations that he had assigned all of his property to the said trustee, that is, all except what he had conveyed to his children, and that he could not control this. He placed notes, etc., the nominal value of which was $5,000, in the hands of Joel Foster, Jr., trustee. The prayer of the amended bill was like that of the supplemental bill, with this addition, that said Joel Foster, Jr., trustee, be ordered to convert the property in his possession into money, and pay the same to the orators.

The answers, while admitting in legal effect many of the allegations in the bill, denied that there was any cause for the divorce; that the grantees in the several deeds had any knowledge or suspicion that the oratrix at the time of the conveyances contemplated the commencement of divorce proceedings; that any of the conveyances were made or accepted with the intention of committing a fraud on the oratrix, or interfering with any of her rights, or with the understanding that the said

William retained any interest in the lands. It was also claimed that the bill could not be maintained because there had been no levy of an execution upon any of the lands in question. The other facts are sufficiently stated in the opinion of the court.

*T. J. Deavitt, Dillingham & Son,* and *Hard & Safford,* for the defendants.

There was no actual fraud; and if it should be said that the conveyances were fraudulent in law, this is answered by the fact that Foster retained the title and control of sufficient property to discharge all his ·duties ·to the oratrix. There can be no foreclosure, as there was not a proper record of the injunction in the town clerk's offices. Acts of 1866, p. 46, (G. S. App. 919). The orators must stand. on the case made in the bill. *Thomas* v. *Warner,* 15 Vt. 110.

It is equally plain that the prayer that " sufficient of said real estate be *sold at auction* to pay the several sums aforesaid," cannot be granted. If William Foster had retained no part of his estate as erroneously alleged in the bill, the most of these conveyances would have been good ; and in any event the court would first exhaust the property retained by him, before invalidating the conveyances. The application of the property retained by him would leave a very small margin to be made a charge upon the conveyed land. This specific prayer cannot therefore be justly or properly granted.

The orators then can have relief only under the general prayer, and to render that prayer serviceable ·in the present case, its office must be strained beyond precedent.

The omission of the orators to *levy execution* upon any portion of the property alleged to have been fraudulently conveyed, is an insurmountable objection to the maintenance of this bill. *Rice* v. *Barnard,* 20 Vt. 479, 484 ; *Barrett* v. *St. Albans Hotel Co.,* 47 Vt. 313, 315.

. The wife has no. general lien on the husband's property ;' the bill itself not showing that the injunction was properly recorded in the town clerk's office so as to create a lien, the orators being

compelled to stand on the bill as made, there was no lien to foreclose.

*J. A. & Geo. W. Wing*, for the orators. After the husband has been guilty of acts that entitle the wife to a divorce she is a *quasi* creditor; and if after that time he conveys his property away with the intent to defraud or hinder her from recovering her alimony, such conveyance is voidable as to her, even if the assignees pay full value; and on decree for divorce and alimony, she becomes a creditor under the law against fraudulent conveyances, and the same may be set aside. The acts of the defendant set out in the bill, and established by the evidence, clearly constitute fraud against the marital rights of the oratrix. The order of the court on granting the alimony established a lien on the real estate thus fraudulently conveyed,—a lien enforceable by foreclosure proceedings.

The following cases fully sustain the right of the wife to enough of this real estate to pay her alimony, and that this is the proper way to reach it. *Jenny* v. *Jenny*, 24 Vt. 324; *Thayer* v. *Thayer*, 14 Vt. 107; *Bailey* v. *Bailey*, 61 Me. 361; *Livermore* v. *Boutelle*, 11 Gray, 217; *Quintel* v. *Quintel*, Wright, 491; 3 Head (Tenn.) 464; *Nix* v. *Nix*, 10 Heisk. (Tenn.) 546; *Turner* v. *Turner*, 44 Ala. 497; *Stuart* v. *Stuart* 123 Mass. 370; *Wilmore* v. *Wilmore*, 5 Or. 467; 86 Penn. St. 495; *Chapman* v. *Chapman*, 13 Ind. 396; *Burrows* v. *Purple*, 107 Mass. 428; *Chase* v. *Chase*, 105 Mass. 385.

The opinion of the court was delivered by

Rowell, J. In the answer of Samuel S. Foster it is averred on information and belief that the oratrix's libel for divorce was amended by setting up a cause that arose after the libel was brought, and that the divorce was granted for that cause and not for a cause that existed at the time the libel was brought. The answer is not evidence of the fact, and no other answer makes the averment, and there is no evidence in the case to sustain it, nor is the point made in defendants' brief. The record shows that the divorce was granted on the libel as it origi-

nally stood. It must be taken therefore that before and on January 20, 1877, the day the libel was brought and the conveyances in question made, the oratrix had cause for divorce. This raises the question whether she then had, in the language of the statute against fraudulent conveyances, " a right, debt, or duty" as against her husband that the law will take cognizance of.

A claim for alimony is incident to divorce and consequent upon it; and while the oratrix may not have been in strict language a creditor of her husband, yet she stood to him in the relation of a creditor, having an inchoate right of payment of whatever alimony might thereafter be decreed to her. Indeed the defendants concede in argument the general proposition that a wife having cause for divorce is a *quasi* creditor before it is granted and an actual creditor after alimony is decreed. The oratrix comes therefore within the purview of said statute. Such is the holding of the cases: *Livermore* v. *Boutelle*, 11 Gray, 217; *Burrows* v. *Purple*, 107 Mass. 428; *Stuart* v. *Stuart*, 123 Mass. 370; *Brooks* v. *Caughran*, 3 Head (Tenn.) 464; *Nix* v. *Nix*, 10 Heisk. (Tenn.) 546; and cases *passim*.

Another question is, Were the conveyances in question, or any and which of them, fraudulent and void as against the orators? At the time they were made the defendant William Foster had good reason to believe and did believe that the oratrix was about to bring her libel against him for divorce, and in view of the sequel he must be taken to have then had good reason to believe, at least, that she had just cause therefor. We are well satisfied that he made said conveyances with the intent on his part of avoiding the payment of alimony. The fact that his wife had before then advised him to convey some of his property to his children by a former wife to benefit them and relieve himself from care, has but little significance in the circumstances of this case, and does not deprive her of the right of now questioning those conveyances. She neither counseled nor anticipated conveyances fraudulent as to herself. A fair and just distribution of his large property among his children she well might have

advised; but of a distribution to an unreasonable amount, including even the homestead on which they lived, with intent to defraud her and so resulting, she has a right to complain. The language of the court in *Nix* v. *Nix* is to the point: " There is no force in the fact that at some moments of harmony between the husband and wife she herself had counseled the sale of the land. A court of equity will attach very little importance to such a fact in view of the surroundings of the complainant. If she did advise it, she did not know at the time that it was the deliberate purpose of her husband to abandon her and her children to their fate." But it is said that the conveyances are not void as against the oratrix because her husband retained property sufficient for the support of himself and family. The property that he conveyed to his children on the day in question was of the value of $22,000, according to his estimate in his answer, and all but $1,500 of it was in real estate in different towns in this State. According to his own testimony he retained that he did not then convey, $10,630—which is a liberal estimate —whereof $8,280 were in mortgage notes against nine different persons, $500 in a bond of the town of Sheldon, $1,000 in cash and small notes, $200 in personal property on his home farm, and $650 in a pasture and a sugar-place in Williamstown. On or about January 20, 1877, he gave said town bond to his attorney to apply on account. In about ten days thereafter he delivered *all* his notes to his son Samuel, directing him to notify the makers thereof that he held them and that payment must be made to him, and he gave notice accordingly. In March following he gave said personal property on the home farm to his daughter, Mrs. Kibby. At some time, but just when does not appear, he gave $2,800 of said mortgage notes to his daughter, Olive M. Warren, as an advancement, as is alleged. The notes thus delivered to Samuel were not given to him, but were put into his hands, as we think, to avoid the payment of alimony.

Thus was the property retained disposed of, and rendered practically unvailable for the payment of alimony, except as it might be made so, as some of it has been, by proceedings for

contempt. A debtor is bound to reserve *ample* property for the payment of his debts. Whether the property reserved is what will be deemed ample for this purpose does not depend entirely on its amount and value; for the real end to be accomplished is, that the conveyance shall not deprive creditors of the means of collecting their debts: *Church* v. *Chapin*, 35 Vt. 223. There is no ground for saying that the defendant, William Foster, retained property amply sufficient to satisfy the demand of the oratrix. Surely the voluntary provisions for his children in such a condition of things are not sustainable against the oratrix. The ancient rule, that voluntary conveyances to children and post-nuptial settlements could be avoided if there was some indebtedness existing at the time has been relaxed in this country and in England, and such provisions will now be upheld if they be reasonable, not disproportionate to the means of the grantor in view of his debts and situation, and clear of any intent, actual or constructive, to defraud creditors: *Kehr* v. *Smith*, 20 Wall. 31; *Lloyd* v. *Fulton*, 91 U. S. 479; *Lerow* v. *Wilmarth*, 9 Allen, 382; *Babcock* v. *Eckler*, 24 N. Y. 623; 2 Kent Com. 441, n. 1; 1 Story Eq. ss. 362, 165; *Gale* v. *Williamson*, 8 M. & W. 405.

These conveyances—except Mrs. Hart's, of which we shall speak hereafter—being without valuable consideration, and made with the fraudulent intent aforesaid, it is immaterial whether or not the grantees were aware of that intent and participated in the fraud. But if it were material, we are well persuaded that Samuel at least knew of his fathers purpose and aided in the accomplishment of it.

Hence it follows that as to the oratrix the said William must be regarded as being the owner and possessor of the lands in question the same as though he held the legal title thereof.

But it is objected that even then there can be no decree of foreclosure, because such a decree presupposes a lien and that here is no lien, (1) for that the restraining order did not sufficiently describe the land that the libellee was enjoined from conveying; (2) for that it does not legitimately appear that said

Foster *v.* Foster.

order was ever filed and recorded in the town clerk's office of any of the towns where the lands are situate; (3) for that the County Court had no power to make the payment of alimony a charge upon the land; and (4) for that the decree for alimony was not responsive to the prayer in the libel in that behalf. The last two objections are made in the answers but not in defendant's brief.

The libel alleged that the libellee was "possessed of certain real estate situate in different towns in the State of Vermont," and prayed that he be restrained from conveying, etc., "said real estate." The restraining order enjoined him from conveying, etc., his "said real estate situated in the State of Vermont." His real estate was situate in the towns of Hardwick, Middlesex, Moretown, and Williamstown. The record shows that the libel and the restraining order were filed and recorded in the town clerk's office of Williamstown on January 30, 1877, in the town clerk's office of Hardwick on February 6, 1877, and in the town clerk's office of Moretown on the 28th of said February; but there is no allegation in the bill of any such records, and therefore it is objected that no proof thereof can properly be made. But without considering these objections, we proceed to the other points made; and first as to the fourth objection.

The libel prayed, among other things, for alimony "out of said real estate," whereas it was decreed in money. But praying for alimony out of specific property does not preclude the court from decreeing it generally or out of other property. The court may treat such a prayer as precatory as to the particular property out of which alimony shall be decreed, and decree it otherwise in its discretion as it may deem just.

Secondly, as to the third objection, the original decree for alimony was for $10,000 in money, whereof one-half was for the support of the oratrix, to be enjoyed by her in her own right, and the other half was in equal shares for the two children, to be placed in trust for their support and benefit; and the payment of the whole was made "a charge and lien upon the real estate of the petitionee." This decree was subsequently modified

in some respects not material to be noticed, and executions taken out thereon and returned *nulla bona.*

The statute provides that on the dissolution of a marriage, the court may decree to the wife such part of the real and personal estate of her husband, or such sum of money to be paid to her in lieu thereof, as it deems just. R. L. s. 2381. Now the power to decree real estate, and thus pass title thereto, clearly includes the power to charge it with the payment of money awarded in lieu thereof, on the principle laid down by Domat, that, in laws conferring power, the greater authority implies the lesser of the same nature. On the same principle, in laws prohibiting acts, the lesser prohibition implies the greater. And we understand it to have been the practice to do what was done in this case. We remember a case in Orange County in which Judge Peck charged the payment of alimony on the libellee's farm, and ordered him to give a mortgage thereof to a trustee to secure it, and the lien to be discharged on the execution of the mortgage.

This view makes a decree of foreclosure an apt remedy in this case, and renders it unnecessary to consider the further objection that the lands have never been levied upon by the orators.

There is no embarrassment in the fact that part of the alimony was decreed for the support and benefit of the children. Alimony, in theory and effect, is primarily awarded to the wife; but the statute provides that when alimony is awarded to the wife, the court, instead of ordering it delivered or paid to her, may order it delivered or paid to trustees to invest and to apply the income thereof to the support of the wife and minor children, or any of them, in such manner as it directs, and to pay the *principal sum* to the wife *and children* as it may order, having regard to their situation and circumstances. R. L. s. 2383. But the right of the children is incident to and a part of the right of the mother, and inseparably connected therewith.

As to the farm conveyed to Mrs. Hart, her former husband, William M. Deavitt, paid in something towards it, but how much does not appear, before he took a deed thereof and gave

back the mortgage to secure the balance of the purchase money. He also paid about $400 of the principal of the mortgage.

In respect to the consideration of conveyances, it is to be observed that there is an important difference between law and equity. At law, a conveyance is wholly good or wholly bad; there is no middle ground. But in equity, when the property is of greater value than the consideration, the conveyance may be impeached to a partial extent as being voluntary, and, if not fraudulent in fact, be sustained to the extent of the consideration. Chancellor KENT says that nothing can be more equitable than this mode of dealing with conveyances of such indecisive and dubious aspect that they cannot be entirely suppressed or entirely supported with satisfaction: *Boyd* v. *Dunlap*, 1 Johns. Ch. 478; 1 Am. Lead. Cas. 49; *Herne* v. *Meeres*, 1 Vern. 465.

We deem the conveyance to Mrs. Hart of precisely this character, and as making a proper case for the application of the equitable rule that it may stand as security for what of the principal of the purchase money her former husband paid, with the interest thereon.

The decree is affirmed in all respects except as relates to this farm, wherein it is modified to meet the views above expressed, and the case is remanded with a mandate accordingly.