STATE *v.* INTOXICATING LIQUOR.

May Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, and POWERS, JJ.

Opinion filed July 2, 1909.

*Intoxicating Liquors—Seizure and Condemnation—Nature of*
*Proceeding—Trial by Jury—"Prosecution for Criminal*
*Offences"—Weight of Evidence—Ownership—Evidence—*
*Constitutional Law—Due Process of Law—Notice—Error*
*Must Affirmatively Appear.*

Proceedings for the seizure and condemnation of intoxicating liquor
alleged to be kept for sale contrary to law are not "prosecutions
for criminal offences" within the provision of our constitution
giving the right to a trial by jury in such prosecutions, but are
civil proceedings *in rem* to fix the status of the property; and
therein the State is not required to prove the unlawful keeping and
sale beyond a reasonable doubt, but only by a fair preponderance
of the evidence.

In a proceeding for the seizure and condemnation of intoxicating
liquors alleged to have been unlawfully kept for sale, instituted
by the complaint of a town grand juror, complainant's authority,
depending on matters dehors the record, can be put in issue only
by plea.

In a proceeding for the seizure and condemnation of intoxicating
liquor, where the warrant with the officer's return thereon was put
in evidence, the claimants were not prejudiced by the officer's
testimony reciting his acts under the warrant and which neither
tended to contradict nor vary his return.

The theory of the law is that all property is in the possession of its
owner in person or by agent, and therefore that its seizure will
operate to impart notice thereof to him; and, if it does, that he
has a right to appear and be heard respecting the charges for
which its forfeiture is claimed.

The requirement of P. S. 5190 that, where intoxicating liquor is seized
as being unlawfully kept for sale, if the owner or keeper of the
liquor is unknown to the officer, and no one is found in possession

or custody of it, the owner or occupant of the building or apartments in which it is found shall be apprehended, is a mode of notifying the owner of the liquor, and is a substitute for the former mode of notifying him by posting the proceedings in the like event.

Where, in proceedings for the condemnation of liquor seized under P. S. Chap. 219, it appeared that the liquor was found in the possession of the respondents, who were thereupon apprehended under the requirement of P. S. 5190, and that the claimant forthwith appeared and was fully heard in resistance of the forfeiture, the seizure of the liquor operated to impart notice thereof to the claimant, and he is bound by the judgment of forfeiture, as against his objection that the statute is unconstitutional for failure to provide for notice to the owner of the liquor seized when he is unknown to the officer.

In a proceeding for the forfeiture of intoxicating liquor alleged to have been unlawfully kept for sale, evidence considered and *held* to warrant the finding that the liquor belonged to a firm operating a saloon in which the liquor was kept, and not to the claimant.

Where, in proceedings for the forfeiture of intoxicating liquor alleged to have been unlawfully kept for sale, the court required one of the defendants, in whose keeping the liquor was found, to produce an insurance policy and, against his objection that he could not be compelled to produce evidence against himself, the court admitted the policy in evidence for whatever purpose it was thought proper, and stated that it would indicate the purpose later, but it did not appear that the question was discussed after that, nor that any use was made of the policy as evidence, error does not affirmatively appear.

PROCEEDINGS based on a grand juror's complaint to a justice of the peace, for the seizure and condemnation of intoxicating liquor alleged to have been unlawfully kept for sale; Merle S. Pike, claimant. Edward Morrissey and Thomas Morrissey, in whose keeping the liquor was found, were apprehended and brought before the court. Trial by court at the December Term, 1907, Bennington County, *Haselton,* J., presiding. Judgment that the liquor in question was, at the time of its seizure, kept and intended for sale contrary to law, and that it be condemned and forfeited. Claimant and said Morriseys excepted. When the case came on for trial the claimant and said Morrisseys each

demanded a trial by jury, which was refused, to which they severally excepted. The opinion states the case.

*O. M. Barber* and *E. H. Holden* for claimant and the Morrisseys.

The statute under which the proceedings are instituted is unconstitutional in that it takes property without due process of law, as there is no provision for notice to the owner of the liquor when he is unknown to the officer. Where such statute does not provide for actual or constructive notice it is void, notwithstanding the fact that the owner had actual notice and appeared. *Woodruff* v. *Taylor,* 20 Vt. 65; *Quimby* v. *Hazen,* 54 Vt. 132; *Kuntz* v. *Sumption,* 2 L. R. A. 655; *King* v. *Hayes,* 80 Me. 206; *Lowry* v. *Rainwater,* 35 Am. Rep. 420; *State* v. *Robbins,* 8 L. R. A. 438; Cooley Const. Lim., 5th Ed. 355, 446; *Stuart* v. *Palmer,* 74 N. Y. 188, 30 Am. St. Rep. 289; *Colon* v. *Lisk,* 153 N. Y. 188, 60 Am. St. Rep. 609; *McConnell* v. *McKillup,* 65 L. R. A. 610.

All previous statutes in this State, providing for the seizure and condemnation of liquor, and whose validity have been upheld by this Court, have had a provision for some kind of notice to the owner. *Lincoln* v. *Smith,* 27 Vt. 328; *Johnson* v. *Williams,* 48 Vt. 565; *Gill* v. *Parker,* 31 Vt. 610.

This is a criminal proceeding in which the parties were entitled to a trial by jury. *State* v. *Klondike Machine,* 76 Vt. 426; *State* v. *One Bottle of Brandy,* 43 Vt. 297; *State* v. *Intoxicating Liquor,* 72 Vt. 22; *Fisher* v. *McGirr,* 1 Gray 1; *Boyd* v. *U. S.,* 116 U. S. 616, 29 L. Ed. 746; *Lees* v. *U. S.,* 150 U. S. 476, 37 L. Ed. 1150; Bishop Stat. Cr., §993; 25 Am. & Eng. Enc. of Law 152; *State* v. *Robinson,* 49 Me. 285; *State* v. *Intoxicating Liquor,* 80 Me. 91. But if this is not strictly a criminal proceeding, the property cannot be forfeited without proof beyond a reasonable doubt that it was unlawfully kept. Hughes Crim. Proc., §1426; *Com.* v. *Intox. Liquors,* 105 Mass. 595; *Com.* v. *Intox. Liquors,* 115 Mass. 142; *U. S.* v. *Burdett,* 9 Pet. 682; 9 L. Ed. 273; *Chaffee* v. *U. S.,* 85 U. S. 516, 21 L. Ed. 908; *Ricker* v. *Hooper,* 35 Vt. 457.

The court erred in ordering Edward Morrissey to produce and put in evidence the insurance policy, thus forcing him to

give evidence against himself which might criminate him.   Wig. Ev., §2264; *State* v. *Slamon*, 73 Vt. 212; *Durkee* v. *Leland*, 4 Vt. 612; *State* v. *Squires*, 1 Tyler 147·; *Emory's Case*, 107 Mass. 172; *State* v. *Norvill*, 58 N. H. 314; *Counselman* v. *Hitchcock*, 142 U. S. 547, 35 L. Ed. 1110.

*W. J. Meagher*, State's Attorney, for the State.

A proceeding for the seizure and condemnation of liquors under search warrant is not one in which a trial by jury is claimable as a right.   23 Cyc. 300; *State* v. *Intoxicating Liquors*, 55 Vt. 82; *Kirkland* v. *State*, 65 L. R. A. 76.   Nor is this even a proceeding that requires proof beyond a reasonable doubt, but only by a fair preponderance of the evidence.   *State* v. *Barrels of Liquor*, 47 N. H. 369.

There was no error in compelling Morrissey to produce and put in evidence the insurance policy.   That was not evidence against him, but against the liquor, as this is merely a proceeding *in rem*.   2 Black on Judgments, 799; Black on Intoxicating Liquors, 352, 353.

ROWELL, C. J.   This is a proceeding based on a grand juror's complaint to a justice for the seizure and condemnation of intoxicating liquor kept for sale contrary to law.   The officer seizing the liquor apprehended and brought before the justice, Edward Morrissey and Thomas Morrissey, in whose keeping and custody he found the same.   Merle S. Pike appeared before the justice and filed his written claim to the liquor as absolute owner thereof, and therein gave as a reason why it should·not be adjudged forfeited that he was engaged in the lawful sale thereof under and by virtue of a second-class license duly issued to him and then in force.   But the justice adjudged that said Morrisseys were the owners and keepers of said liquor and not the said Pike, and that the same was intended for sale contrary to law, and thereupon forfeited and condemned it, whereupon the respondents and Pike appealed to the county court, where they demanded a trial by jury, which was denied.   They now say that this was error, for that the proceeding is criminal, and therefore that they had a constitutional right to such a trial. But this is not an open question in this State, for whatever the

law is in other jurisdictions to which we are referred, it is settled law here that such proceedings are not "prosecutions for criminal offences" within the meaning of the constitutional provision giving a right to a trial by jury in such prosecutions, but are only proceedings *in rem* to fix the status of the property, and therefore essentially civil and not criminal. This precise point was so ruled in *State* v. *Intoxicating Liquor,* 55 Vt. 82, and that case is still the law of this State on that point. See *State* v. *Klondike Machine,* 76 Vt. 426, 57 Atl. 994.

But the respondents say that though this is not a criminal proceeding, still the fact that they were keeping the liquor for unlawful sale should have been found beyond a reasonable doubt, and not by a fair balance of the evidence, as the court found it. But this is not so, even if the finding involves something criminal, which we do not decide, for if it does, the only effect of that would be to add to the other testimony favoring the respondents the evidential weight of the presumption of innocence. *Bradish* v. *Bliss,* 35 Vt. 326; *Fire Association* v. *Merchants National Bank,* 54 Vt. 657, 668.

The State offered to show by the officer who served the warrant, what he did under it. The respondents and Pike claimed that to make the warrant legal, it was incumbent on the State to prove that the signer of the complaint was at the time a grand juror of Sunderland, the town in which the liquor was seized, and had qualified as such, and objected to the admission of the testimony for want of such proof, and also for that the return on the warrant was the best evidence of what was done under it. The objection was overruled and the testimony admitted, to which the respondents excepted. The witness answered that he took possession of the liquors he found in the place kept by the Morrisseys; that he went into the building and found the Morrisseys in possession; that there was a counter there and barrels of different kinds of liquors, which he named.

But the authority of the complainant was not in issue, as it was not necessarily involved in the nature of the proceeding, and could be put in issue only by plea, as it depended on matter dehors the record; and there was no plea, nor was the question in fact tried. *State* v. *Intoxicating Liquor,* 38 Vt. 387; *State* v. *Intoxicating Liquor,* 44 Vt. 208.

No possible harm could have come to the respondents by allowing the officer to testify what he did under the warrant, for it was in the case with the return thereon, which showed for itself what was done under the warrant, and there was nothing in the testimony tending to contradict nor to vary the return.

It is objected that the statute on which the proceeding is founded is unconstitutional because it nowhere provides for notice to the owner of the liquor seized unless he is known to the officer making the seizure. It is said that the previous statutes providing for the seizure and condemnation of liquor, and whose constitutionality has been upheld by this Court, have had a provision for some kind of notice in such cases. But none of them had a provision for any kind of notice except by summons, only when no one was known who could be notified in that way, not only the owner, but the keeper and possessor as well, in which case a written notice of the proceedings was to be posted in some public place for such a time.

But now, if the owner or keeper of the liquor is unknown to the officer, and no one is found in possession or custody of it, instead of posting a notice of the proceedings, the owner or occupant of the building or apartments in which the liquor is found is to be apprehended if known to the officer or can be ascertained by him. This mode of notifying the owner in the event named, is a substitute for the former mode of notifying him by posting the proceedings in the like event. So it cannot be said that the statute is essentially different in this respect from what it was when its constitutionality was upheld by the Court.

But to consider the matter farther. The theory of the law is, as said in *Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. Ed. 914, that all property is in the possession of its owner in person or by agent, and therefore that its seizure will operate to impart notice thereof to him; and if it does, that he has a right to appear and be heard respecting the charges for which its forfeiture is claimed. Now here, the liquor being found in the possession and keeping of the respondents, its seizure did operate to impart notice thereof to Pike, who appeared forthwith as claimant, and has been fully heard. This, certainly, ought to bind him.

In *State* v. *Intoxicating Liquor,* 44 Vt. 208, the officer returned that he summoned the claimants, but did not tell how.

They appeared and objected to the sufficiency of the return in this respect. But the Court said it was not necessary to decide that question, for if no service at all was made upon a claimant, he could voluntarily appear and make claim, and if he did, the procedings would be as well based on his claim as on the most perfect service; that as the claimants in that case had, after objecting to the return, remained in court and made claim, the proceedings thereafter were well founded on their voluntary stay. And further, according to *Johnson* v. *Williams*, 48 Vt. 565, Pike would be bound though he received no notice and had not appeared. That was trover against the officer who destroyed the plaintiff's forfeited liquor. There the keeper of the liquor was summoned pursuant to statute, as here the keepers were apprehended pursuant to statute. But the plaintiff had no notice of the proceedings until after the whole were concluded, which he offered to prove, but was not permitted. This Court said that all the notice required was given; that the person to whose keeping the plaintiff had intrusted his property was notified; that if he failed to appear to contest an adjudication of forfeiture, or to notify the plaintiff so he could appear for that purpose, the consequences of such failure must fall upon the plaintiff; that it did not avoid the legality of the proceeding, nor change the status of the property as fixed by the adjudication.

The bill of exceptions says that the State was permitted to introduce evidence of divers acts and sayings of the Morrisseys that tended to prove, and that the State claimed did prove, that the liquors in question belonged to them, and were in their possession and subject to their dominion. And this is not denied in the brief for the defence, except it says that there was no evidence to show that Thomas Morrissey had anything to do with the sale of liquor in Sunderland other than as the servant and agent of Pike, and had no other interest nor ownership in the business at the time of the seizure, and never had. But nothing is vouched in support of this claim except the testimony of Thomas Morrissey himself, who testified to that effect as to his connection with the business. But that can hardly be taken as disproving as to him the statement of the bill of exceptions as to the tendency of the evidence of the divers acts and sayings · of the Morrisseys that the State was permitted to introduce. And on looking into the State's testimony on this point, especially

that of Mr. Bacon, the insurance agent, we think it cannot be said that that statement is not true as to Thomas Morrissey as well as to Edward Morrissey.

But it is strenuously contended that there was no evidence to support the finding that Pike was not the owner of the liquor. The question being whether there was any evidence, it will be sufficient if there was some that tended to support the finding; and that there was, cannot be doubted.

The State called one Guyette as a witness, who testified that Pike told him on a certain occasion when the matter of his taking out a license came up, that he was not going to run the business himself, but was going to transfer the license, but did not really say to whom, although the witness knew whom they were talking about; that on the witness's saying that that could not be done, Pike said it could, for they had transferred one in Arlington—that Mr. Morrissey transferred one to a man from Brandon; that on the witness's further saying that if that was done the liquor could not come in Pike's name, but would have to come in the name of Cullinan and Morrissey, Pike said he could not see why it could not come in his name, whereupon the witness said if they got their liquor to come in his name for them to sell there, they being nonresidents, almost anybody could have liquor come, and that he did not think it was likely it was so, and that Pike said he did not, really.

Now the State claimed that that was just what Pike did in the beginning, transferred the license to Edward Morrissey and Thomas Cullinan, both of whom lived in Arlington, and that they carried on the business on their own account and for their own benefit, and not for Pike, until Cullinan died on June 27, 1907, when Thomas Morrissey, who also lived in Arlington, came into the business as part owner with his brother Edward, and continued therein in that capacity till the liquor was seized.

And further, it appeared that from the first the money derived from and used in and about the business was deposited in the bank in the name of Morrissey & Cullinan, and drawn against by them while Cullinan lived, and that even after that, the account was kept in the same way down to the time of the seizure, which was July 19, 1907, after which it was kept in Pike's name, and he testified that it was kept in the name of Morrissey

& Cullinan as matter of convenience, as he was not at the saloon all the time, but was at work for his father by the month, and because he did not know that they could sign his name to checks, but supposed he had to draw his own checks.

It further appeared that Edward Morrissey and Cullinan bought the building in which the saloon was kept for the purpose of using it as such if Pike got a license, but it appeared that Pike agreed to save them harmless in the transaction. It also appeared that after Cullinan's death, the Morrisseys got the liquor insured in the name of Edward Morrissey and Cullinan in the same policy that the building was insured; but Pike testified that one time when Morrissey and Cullinan were talking about getting the building insured he told them he wanted his stock insured, and they said they would have it insured; that it came to his knowledge later, without saying when, that he had paid for the insurance, but that he never saw the policy till the week before he was testifying, and never knew till then that the stock was put into their policy. Thus it appears that there was evidence to support the finding that Pike was not the owner of the liquor in question, unless we except the eight barrels of beer that he put in the day of the search, which the officer delayed a little that he might seize them. It appeared that this beer was bought and paid for by Pike, and it is especially objected that there was no evidence to support the finding that the Morrisseys were engaged in keeping it for unlawful sale. But that question was not to be tried by itself alone, nor controlled by the nearness of time to the seizure and the fact of purchase and payment by Pike, for the liquor had usually, ostensibly at least, been bought and paid for by him; but was to be tried with the rest of the case, and viewed in the light of all the evidence, and being thus tried and viewed, the court found nothing to differentiate the status of this beer from that of the rest of the liquors, and so classed it with them in its findings. It is obvious from what has been said, that it cannot be adjudged that there was no evidence to support this action of the court.

When the insurance agent Bacon was on the stand in the State's opening, and had testified to having, as such, issued a policy on the building where the liquor was kept and its contents at the request of the Morrisseys, the State asked that they

be ordered to produce the policy, that the State might use it in evidence. Thereupon Edward Morrissey, in whose possession and control the policy was, objected that as to him the proceeding was in its nature and effect so far a criminal proceeding that he could not be compelled to produce evidence against himself. But the court ordered its production, and it was produced and put in evidence by the State, to which exception was taken. In this connection counsel for the defence told the court that they purposed to put the policy in evidence in their defence, but insisted that they could not be compelled to produce it against their will, and inquired if it was received as evidence against Pike. The court said it would receive it for whatever purpose it was thought proper, and that it would indicate to counsel on both sides what those purposes were; that when it had heard all the evidence and had considered the matter it would indicate to counsel for what purpose it would use it; that it had been received for any legal purpose, and the court would not look at it until that question had been discussed. But it does not appear that the question was discussed after that, nor that anything further was said about the matter in any way, nor that the court made any use of the policy as evidence, and the fair inference is, in the circumstances, that it did not, and therefore, in no view, does error in respect of the matter affirmatively appear.

*Judgments and order for destruction affirmed. Judgment against the Morrisseys for costs of search and seizure. Let execution be done.*