# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT,

---

THOMAS LYNCH'S ADMR. *v.* WILLIAM MURRAY.

· May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 14, 1912.

*Executors and Administrators—Setting Aside Decedent's Fraudulent Conveyance—"Actual Fraud"—Test—Consideration—P. S. 2863—Liberal Construction—Assets—Deficiency—Expenses of Necessary Actions—Master's Findings—Conclusiveness—Presumptions on Review—Evidence on Former Trial—Death of Witness—Admissions.*

In the law of fraudulent conveyances, "actual fraud" means fraud according to the common conscience, and not according to that of the parties to the conveyance.

Where a decedent, who owned a farm worth $1,800 and mortgaged for $600, on being threatened with a suit that he in good faith believed was unfounded and unjust, in order to make himself execution-proof, conveyed the farm to defendant without any consideration, except that defendant assumed the mortgage and agreed to reconvey to decedent when the threatened suit was settled, the conveyance was without sufficient consideration, and was fraudulent

as against the rights of the creditor in the threatened suit, and so could be set aside by decedent's administrator in favor of subsequent creditors, under P. S. 2863.

In a suit by an administrator to set aside the decedent's conveyance as a fraud against his creditors, where the facts found by the master permit no conclusion except that the conveyance was made with fraudulent intent on the part of both defendant and decedent, it will be presumed on review that the court below drew that conclusion.

In a suit by an administrator to set aside the decedent's fraudulent conveyance, whether there was a deficiency of assets when the suit was brought is a question of mixed law and fact, and so the finding of the master that there was is conclusive, unless made through some mistake of law.

It was not necessary for the master to audit the various bills on which he reported in connection with his finding that there was a deficiency of assets when the suit was brought, as he reported bills for administration and burial expenses amounting to about twice the assets in the administrator's hands, and it is presumed that he considered the bills reported sufficiently to determine that they were enforceable to an amount that would leave a deficiency of assets.

Though, under P. S. 2863, authorizing an administrator, if there is a deficiency of assets, to sue to set aside a fraudulent conveyance made by his intestate, the expenses of such suit cannot be considered in determining whether there was a deficiency of assets when it was begun, yet, if the administrator prevails in that litigation, his expenses therein, including attorney's fees, should be satisfied out of the property fraudulently conveyed.

In a suit by an administrator *de bonis non* to set aside the decedent's fraudulent conveyance in order to replenish an alleged deficiency of assets, the fact that, if decedent's executor had accounted for certain personalty that came into his hands, or if his bondsmen had been sued for his failure to do so, there would have been no deficiency of assets, is no defence, for defendant cannot retain the advantage of his fraud by relying on the misdoings of decedent's executor, nor is the liability of an executor's bondsmen an asset of the estate.

In determining whether there is a deficiency of assets so as, under P. S. 2863, to authorize an administrator to sue to set aside his intestate's fraudulent conveyance, there should be considered not

only the claims allowed by the commissioners, but also the burial and administration expenses.

If there is a deficiency of assets at any time during his administration, an administrator may sue, under P. S. 2863, authorizing an administrator to sue to set aside a fraudulent conveyance where there is a deficiency of assets.

P. S. 2863, authorizing an administrator, if there is a deficiency of assets, to sue to set aside a fraudulent conveyance by his intestate, should be liberally construed.

When an intestate's conveyance is set aside as a fraud against his creditors, defendant will not be allowed his disbursements for taxes, insurance, and payments of interest on the mortgage assumed by him, where those payments were necessary to give color of good faith to the fraudulent transaction.

In a suit by an administrator *de bonis non* to set aside, on the ground of a deficiency of assets, a fraudulent conveyance by the decedent, the files in a prior action, brought by the decedent and continued by his executor and plaintiff, to set aside the same conveyance, were admissible in evidence to show the nature and extent of the former litigation and the amount and occasion of attorney's fees and administrator's charges therein.

Nothing to the contrary appearing, it will be presumed that a master used evidence only for the purpose for which it was properly admissible.

In a suit by an administrator to set aside, on the ground of a deficiency of assets, a fraudulent conveyance by the decedent, evidence of the testimony of the decedent in a former suit, brought by him against defendant to set aside the conveyance, was admissible in favor of the orator, where defendant claimed in both cases that the conveyance was made in good faith, and there was adequate cross-examination on that question in the former case.

Only grounds of objection and exception both made below and relied on in appellant's brief will be considered on appeal.

To render admissible at a subsequent trial testimony given on a former trial by a witness since deceased, it is sufficient that the issues were substantially the same in both trials, so that the opportunity for cross-examination in the former trial was adequate.

Evidence of defendent's admissions in a former trial were admissible against him in a subsequent trial, regardless of whether the parties and issues in the two trials were the same.

It will be presumed on appeal that evidence was offered and received on the ground on which it was admissible, nothing to the contrary appearing.

APPEAL IN CHANCERY. Heard on the pleadings, master's report, defendant's exceptions thereto, and his motion for a decree in his favor, at the September Term, 1909, Rutland County, *Stanton,* Chancellor. Exceptions and motion overruled, and decree for the orator. The defendant excepted. The opinion states the case. See *Lynch's Admr.* v. *Murray,* 81 Vt. 97.

*Charles L. Howe* for the orator.

The evidence of Thomas Lynch on the former trial was admissible in favor of his administrator in this. *Glass* v. *Beach,* 5 Vt. 172; *State* v. *Hooker,* 17 Vt. 662; *Marsh* v. *Jones,* 21 Vt. 378; *Williams* v. *Willard,* 23 Vt. 369; *Downer* v. *Rowell,* 24 Vt. 343; *Whitcher* v. *Morey,* 39 Vt. 459; *Earle* v. *Tupper,* 45 Vt. 275; *Rogers* v. *Dickey,* 17 Ohio 439, 49 Am. Dec. 467.

The conveyance in question was fraudulent as against McCabe, and therefore can be set aside as against subsequent creditors. *Hutchinson* v. *Kelly,* 1 Robinson, 123; 1 Bailey Equity (S. C.) 144; Note to *Deshon* v. *Wood,* 1 L. R. A. 520.

*M. C. Webber* for the defendant.

Even a voluntary conveyance is good as against subsequent creditors, unless executed as a cover for future schemes of fraud. So subsequent purchasers cannot have a conveyance set aside on the ground that it was in fraud of creditors unless they allege and prove that it was intended as a fraud upon subsequent purchasers. 20 Cyc. 738-739; *Screyer* v. *Scott,* 134 U. S. 405, 33 L. Ed. 955; *Horbach* v. *Hill,* 112 U. S. 144, 28 L. Ed. 670; *Burton* v. *Platter,* 53 Fed. 901; *Neuberger* v. *Keim,* 134 N. Y. 35; *Hogeman* v. *Buchanan,* 14 Am. St. Rep. 732; *Patree* v. *Brotherton,* 133 Ind. 692, 32 N. E. 300; *Hilton* v. *Morse,* 75 Me. 258; 20 Cyc. 517; *Fair Haven Marble Co.* v. *Owens,* 69 Vt. 246; *McLane* v. *Johnson,* 43 Vt. 48; *Church* v. *Chapin,* 35 Vt. 223; *Washington Nat. Bank* v. *Beatty,* 76 Atl. 442.

Subsequent creditors can impeach a voluntary deed only by proving the existence of an actual intent in the minds of the

parties, at the time of the execution of the conveyance to hinder, delay or fraud creditors. *Sexton* v. *Wheaton*, 21 U. S. 295; *Loughton* v. *Harden*, 68 Me. 208; *Bouquet* v. *Heyman*, 50 N. J. Eq. 114, 24 Atl. 266; *Bank* v. *Bank*, 141 Ind. 352, 50 Am. St. Rep. 330.

HASELTON, J.   This is a bill in chancery brought by the administrator *de bonis non* of the estate of Thomas Lynch. The bill is founded on P. S. 2863, which authorizes an executor or administrator, where there is a deficiency of assets, to maintain a suit to set aside a fraudulent conveyance made by the deceased person whom he represents. The conveyance in question was made by Thomas Lynch to William Murray, the defendant, June 20, 1898. The case was heard on bill, answer, master's report and defendant's exceptions thereto, and on the defendant's motion for a decree in his favor, and it was decreed that the conveyance in question is void as to the creditors of Lynch and of his estate to the extent of the deficiency of the assets of the estate to pay such creditors. There were further provisions in the decree the propriety of which, except as herein noticed, is not questioned, provided the decree, so far as above recited, was rightly made. The decree is in substantial conformity with that directed by this Court in its mandate in the well-considered case of *McLane* v. *Johnson*, 43 Vt. 48. Murray, the defendant, appeals.

It is claimed by Murray that it does not appear by the report that the conveyance to him was made with an actual fraudulent intent on the part of Lynch. It appears from the report that Lynch had owned and occupied the farm for about ten years before the conveyance in question and that during most of that time, a period of about ten years, he had kept in his family one McCabe who had left shortly before the conveyance and who claimed that there was due to him from Lynch a large sum on account of labor done by the former for the latter; that McCabe threatened to bring suit on such claim; that Lynch hearing of the threatened, or contemplated, action of McCabe consulted his close friend Murray as to what should be done under the circumstances, and that the two called upon a third person to draw the deed in question, and that after it had been properly executed, Lynch delivered it to Murray, and Murray took it and had it recorded.

The farm was then worth $1,800. It was unencumbered except by a mortgage of $600. There was no consideration for the deed of Lynch's equity of redemption, but Murray assumed the comparatively small mortgage. Lynch believed that he had more than paid McCabe and that the latter's claim was unfounded and unjust, but feared that the latter might obtain a large judgment on his claim, and he gave the deed for the purpose of so transferring the apparent title to the property that it could not be reached in execution by McCabe. Lynch told Murray that McCabe had been more than paid, and it was agreed between Lynch and Murray at the time of the giving of the deed that on settlement of the McCabe claim the property should be deeded back to Lynch. The master does not in terms find that the conveyance was fraudulent, but the facts found as above stated are equivalent to a finding that the conveyance was actually fraudulent; for, as has well been said, actual fraud means "fraud according to the common conscience"; and it is that conscience and not Lynch's or Murray's which determines the character of this conveyance.

Bigelow, Fraudulent Conveyances, Knowlton's Edition, 1, 444.

Even though Lynch did not believe that he owed McCabe it was the latter's right if he thought otherwise to bring suit and have his rights determined, not by the judgment of Lynch, but by the judgment of the court, and it was the duty of Lynch, so far as his property not exempt would enable him, to satisfy any such judgment, and so the conveyance was made with the fraudulent intent of defeating the right of McCabe and of avoiding the duty of Lynch, and was an actual fraud upon one who, as was contemplated, might become a judgment creditor in consequence of claims existing at the time of the conveyance. *Foster* v. *Foster,* 56 Vt. 540; *Corey* v. *Morrill,* 71 Vt. 51, 42 Atl. 976; *Kimball* v. *Thompson,* 4 Cush. 441, 50 Am. Dec. 799; *Rogers* v. *Evans,* 3 Ind. 574, 56 Am. Dec. 537.

With great good sense, the Statute of Elizabeth counted as fraudulent, conveyances which tended "to the let or hindrance of the due course and execution of law and justice." 13 Eliz., Chap. 5, Clause 1.

To say that fears of an unjust judgment against Lynch affected the character of the transaction would be much like saying that a mob is justified in hanging or burning one charged

with crime because of apprehensions that a court of law will unjustly acquit him.

It is further claimed by Murray that there is no finding in the report that he had any fraudulent intent in taking the deed and that he must be considered as an innocent grantee. But the facts above stated permit but one conclusion, that is, that he was in collusion with Lynch; that he took the deed in furtherance of the fraudulent intent of Lynch and for the purpose of effectuating it. It is therefore to be presumed that the trial court drew that conclusion. *Davenport* v. *Crowell,* 79 Vt. 419, 65 Atl. 557; *Johnson* v. *Paine,* 84 Vt. 84, 78 Atl. 732; *Perkins* v. *Perley,* 82 Vt. 524, 74 Atl. 231.

We have then a case of a conveyance given by the grantor and taken by the grantee with the actual fraudulent intent on the part of both of defeating such existing claim, if any, as McCabe might succeed in establishing through regular proceedings in a court of justice.

The defendant claims that this was not a voluntary conveyance, on the ground that Murray assumed to pay the mortgage on the farm. As we have seen the farm at the time of the conveyance was worth $1,800, the mortgage was $600, and nothing was paid for the valuable equity of redemption. This could be levied upon by creditors, and its alienation without consideration was within the statute. The circumstance of the assumption of the mortgage, and other circumstances connected therewith do not tend to relieve the transaction of its fraudulent character in view of the fact that it was agreed between the parties that when the McCabe claim was put out of the way the property should be deeded back to Lynch. In view of that agreement the assumption of the mortgage seems to have been intended rather to give a fair aspect to the fraud than to make the transaction *bona fide.* Bigelow, Fraudulent Conveyances, Knowlton's Edition, 39, 122; *Spencer* v. *Caverhill,* 133 N. W. 450, 453; *First National Bank* v. *Bertschy,* 52 Wis. 438, 9 N. W. 534; *Lyons* v. *Haddock,* 59 Ohio, 682, 13 N. W. 737; *Randall* v. *Vroom,* 30 N. J. Eq. 353; *Stutson* v. *Brown,* 7 Cow. 732; *Welcome* v. *Batchelder,* 23 Me. 85.

As the parties to the fraud had contemplated, McCabe brought suit against Lynch and caused the property which the deed attempted to convey to be attached as the property of Lynch. Negotiations for a settlement of the claim were had,

and during the negotiations it was represented to McCabe, and by Murray, who took part therein, that an execution against Lynch would be worthless for the reason that the deed in question was valid.

During the first term of court after the bringing of McCabe's suit it was agreed between McCabe and Murray, the defendant, that McCabe should have $75 and costs of the suit in settlement thereof, and that if the agreement was not carried out during that term of court McCabe should have judgment for that amount. The agreement was not kept, McCabe took his judgment and levied execution on personal property mentioned in the deed. This personal property we have not before referred to, but the deed attempted to convey personal property to the value of $500, in addition to the real estate. McCabe having levied on this personal property, Lynch requested Murray to pay the execution, and Murray, by agreement with Lynch, attended the execution sale and bid off the personal property in one lump for $102, which was just enough to pay the amount of the execution with costs. This sum Murray paid to the sheriff. The claim of McCabe having been thus disposed of, Lynch asked Murray to reconvey to him the property in question, and offered to pay the latter what might be due him in settlement. But Murray declined to settle or reconvey.

Thereupon Lynch brought a bill in chancery to have the deed in question set aside. Murray filed an answer and the case was referred to a special master who made and filed a report. In the meantime Lynch had died and his executor had entered to prosecute. Before the matter was disposed of in the court of chancery the executor died. Thereafter the administrator who prosecutes this suit was appointed and entered to prosecute the former suit. He filed an amended bill which was demurred to on the ground that it sought "to bring upon the record new matter repugnant to and inconsistent with that set forth in the original bill and substantially constituting a new bill." The court of chancery sustained the demurrer and dismissed the bill. An appeal was taken to this Court where the decree of the court of chancery was affirmed and the cause remanded with leave to the administrator to make further application if he desired. No application was made, and on motion of the defendant an order was filed dismissing the bill.

Thereafter this bill was brought. It is founded on P. S. 2863, which, as has been said, gives an administrator, where there is a deficiency of assets in his hands, the right to bring suit, for the benefit of creditors, to set aside a fraudulent conveyance made by the decedent.

The defendant claims that the bill does not allege the requisite fraudulent intent on the part of Lynch. The bill alleges substantially the facts already stated herein as found by the master, and while the bill asserts that the wickedness was all on the part of Murray, and that Lynch acted in good faith, this is a conclusion which the facts alleged will not permit, for the facts alleged and the facts found by the master permit only one conclusion and that is that the conveyance was made with a fraudulent intent on the part of both grantor and grantee in respect to such right as McCabe might establish and in respect to any debt and duty owing to McCabe which he might establish by the judgment of the courts. *Blenkinsopp* v. *Blenkinsopp,* 1 De Gex. M. & G. 495; *Foster* v. *Foster,* 56 Vt. 540.

The defendant claims that the bill is insufficient in other respects all of which we have examined; and with reference to these claims it is enough to say that this case does not stand on demurrer.

The actual fraudulent intent on the part of both Lynch and Murray rendered the conveyance void as against subsequent creditors. *McLane* v. *Johnson,* 43 Vt. 48; *Wilson* v. *Spear,* 68 Vt. 145, 34 Atl. 429; *Corey* v. *Morrill,* 71 Vt. 51, 42 Atl. 976.

The commissioners on the estate of Thomas Lynch appraised the personal property at $455.75. On this personal property there were, however, two mortgages to secure J. E. Manley for signing an injunction bond in the suit brought by *Lynch* v. *Murray,* for costs and for attorney fees in that suit and for money Manley might pay out for Lynch. Manley brought the suit, last referred to, and conducted the litigation in the life time of Lynch. Manley is dead. His administrator is beyond the jurisdiction of the court and so far as appeared the orator could not show what his charges against Lynch were. Manley was Lynch's executor, and after his death the administrator *de bonis non* attempted to get an accounting with Manley's administratrix but was unable to do so, and he has received nothing from that source. It appeared that there were no known assets that could be recovered except the sum of $32, due from one

Newton which he is willing to pay. As already stated Manley's administratrix is beyond the jurisdiction of the court. The administrator could get no trace of any personal property belonging to Lynch's estate except that which went to Newton out of which the obligation to pay $32 arose. The administrator has received from all sources $442 and has paid out $73.24, leaving a balance in his hands of $368.76.

On the other hand the costs taxed against him in the suit begun by Lynch against Murray amount to $79.58. He claims for services as administrator the apparently moderate sum of $30 a year, but at this rate his total claim is $180. Charles L. Howe, Esq., and the estate of Col. Baker have, against the Lynch estate, bills of the amount of $272.88, for services rendered the administrator in carrying on to determination the suit begun by Lynch in his life time. Mr. Howe has a further bill of $75 rendered the administrator in contesting a claim for $574 made by one Delia Mitchell, the housekeeper of Lynch, against the estate. This claim was disallowed by the commissioners but is pending on appeal. The commissioners allowed claims against the estate, unappealed from, to the amount of $264.24. The burial expenses were an additional sum of $60.25.

The master reports that, if it is for him to find how the fact is, he finds that at the time this suit was brought there was a deficiency of assets. The question was a mixed one of law and fact and his finding in that regard governs unless he arrived at it through some misconception of the law.

Our statutes provide that when the assets of an estate are insufficient the necessary expenses of administration shall first be paid, and next the necessary funeral expenses. It was not necessary for the master to audit the various bills upon which he has reported. To do that pertains more properly to the probate court. He has reported bills for administration expenses and burial expenses to the amount of about twice the assets in the hands of the administrator, and it is to be presumed that he so far considered these bills as to determine that they were proper and enforceable to an amount which would not leave in the hands of the administrator funds with which to pay the claims allowed by the commissioners against the estate of Lynch, to say nothing of the claim disallowed and pending on appeal. So there was a deficiency of assets to meet the claims of the creditors of Lynch.

The case is so argued that it seems proper to refer to the question of whether the expenses of maintaining this suit, including attorneys' fees, can be satisfied out of the property fraudulently conveyed. Such expenses and fees cannot be considered in determining whether there was a deficiency of assets at the time when the suit was brought, and it is clear from the report that the master did not consider them upon that question. But since the statute makes it the right and the duty of an administrator to bring a suit of this sort where there is a deficiency of assets, it by necessary inference contemplates that a fraudulent conveyance shall be set aside so far as to provide for the expense of the litigation necessary to set it aside. If an administrator, finding a deficiency of assets, must conduct, at his own expense, the litigation necessary to set aside a fraudulent conveyance, then the law is farcical. But, of course, it contemplates nothing of the sort, for the right to satisfy the expenses of the necessary litigation out of the property fraudulently conveyed is an incident to the right to institute and carry on the litigation.

The defendant urges that if Manley, Lynch's executor, had accounted for the personal property which came into his possession there would have been no deficiency of assets; but the law does not consider any nice question of priority as between wrongdoers, and the master having found that there is a deficiency of assets in the hands of the administrator, Murray cannot retain the advantage of his fraud in reliance upon the misdoings of Manley. It is urged that Manley gave a bond as executor to the amount of $1,000, and that there is no finding that it cannot be recovered on. And the master, in fact, reports that it did not appear whether or not the bondsman is or is not good for the amount of the bond. But this is immaterial, for the liability of the bondsman is not in any proper sense an asset of the estate, and the law will not compel resort to an innocent bondsman for the purpose of securing a fraudulent grantee in his holding of the ill-gotten assets of an estate.

The defendant says that the commissioners' allowance of $264.24 as the amount of debts against Lynch's estate is the only sum for consideration on the question of deficiency of assets. But such claim ignores our statute providing for administration expenses and burial expenses before the determination of the

amount available in payment of the debts allowed by commissioners.

The defendant claims that he was entitled to a judgment in his favor on the ground that there was not a deficiency of assets at the time of the death of Lynch. But the statute fairly construed gives the administrator a right in behalf of creditors to have fraudulent conveyances set aside if at any time during his administration there is a deficiency of assets.

A statute like that under consideration is to be liberally construed, and ever has been so construed, and the principles of the common law are adequate to a salutary interpretation and application of such a statute. *Twyne's Case,* 3 Coke, 80 b; Lord Mansfield in *Cadogan* v. *Kennett,* 2 Cowp. 434.

The defendant argues that the decree makes no provision for protecting him on account of his disbursements for taxes on the property, for insurance and for money paid as interest on the $600 mortgage; but he is entitled to no protection on account of these payments. It was necessary for him to make those disbursements to give color of good faith to a transfer which was in fact fraudulent, and equity will not aid him in securing reimbursement for his expenses incurred for the purpose of defeating justice and concealing a fraud.

The defendant excepted to the report of the master on various grounds. We proceed to consider those which are relied on in his brief. He claimed, and claims, that there was no evidence to warrant a finding that the deed was without consideration, asserting that the assumption of the mortgage by him was a sufficient consideration. The finding tells all about the assumption of the mortgage and amounts to a finding that the deed was without consideration unless the assumption of the mortgage was a consideration. The finding lays before the court the fact upon which the defendant relies and that is enough. The legal effect of that fact we have already considered.

The master received in evidence the files in the case brought by Lynch and carried on by his executor and by the plaintiff as administrator *de bonis non.* These files were offered as a part of the petition, they being referred to therein, as evidence of the nature, character and extent of that litigation, and as showing that the question of a fraudulent conveyance was *res judicata.* It is claimed that they were not admissible unless the former case is here *res judicata,* and that it is not because that was a

case between the grantor and the grantee while in this the administrator represents the creditors.   But the files in the former case were admissible as showing the nature and extent of the original litigation, for it was important on the question of attorneys' fees and the administrator's charges, covering a period of six years, to know the occasion of such fees and charges and delays.   The master nowhere indicates that he treated the former case as *res judicata,* and the defendant in another part of his brief seems to recognize the situation in this respect, for in speaking of the former case he says "the judgment of the court in that case is not *res judicata* in this, even if the court so found."

The fair inference is that the master used the evidence only for the purposes for which it was admissible.   *State* v. *Intoxicating Liquor,* 82 Vt. 287, 296, 73 Atl. 586; *Limerick Bank* v. *Adams,* 70 Vt. 132, 141, 40 Atl. 166; *State* v. *Spaulding,* 61 Vt. 505, 17 Atl. 844.

The orator called as a witness F. S. Platt, Esq., who as master had heard the former case, and introduced in evidence, by his testimony, the substance of what Lynch had testified to before him.   The grounds of objection and exception both made below and relied on in the defendant's brief, and none others are considered.   *Duggan* v. *Heaphy,* 85 Vt. 515.   These grounds are that the former case involved an entirely different cause of action and that the defendant was deprived of the right of cross-examination, and that so, though Lynch is dead, his testimony as witness in the former case cannot be used here.   With reference to these questions the defendant cites and relies upon §§1386 and 1387 of Wigmore's Treatise.   The rule as to the substantial identity of parties and issues is well stated and fortified in the sections referred to, and the real point of the rule is there thus expressed: "It is sufficient if the issue was the same, or substantially so with reference to the likelihood of adequate cross-examination, because the opponent has thus already had the full benefit of the security intended by the law."   The author proceeds: "The general rule in this shape is nowhere disputed.   But there is naturally much variance shown in the strictness of its application in specific cases.   It is enough to suggest that the situation is one that calls for common sense and liberality in the application of the rule and not a narrow and pedantic illiberality.   On the whole the judicial rulings

show a liberal inclination to receive testimony already adequately tested.''

We think that the above quotation is a satisfactory statement of the law, and it is, as Wigmore shows, well sustained by authority. In §1388 of his work, Professor Wigmore goes on to say that it is sometimes claimed that the rule in cases where the doctrine of *res judicata* is invoked is the true rule in respect to the use of testimony taken in a former case, but he shows by reason and abundant authority that the niceties of the rule of *res judicata* do not determine the admissibility of the evidence formerly given; but that its admissibility depends upon whether the party against whom it is used had in the former case adequate opportunity and motive for sifting the testimony by cross-examination.

Judged by this test the evidence given by Lynch in the former case was admissible here, for in both cases the claim of the defendant, Murray, was that the conveyance was in good faith, and his motives and opportunities in the former case were adequate to a cross-examination such as he might have desired.

True this case asserts a new equity, growing out of the deficiency of assets, an equity so distinct from that asserted in the original bill that it could not be introduced by way of amendment. *Lynch's Admr.* v. *Murray,* 81 Vt. 97, 69 Atl. 133.

But this new equity leaves untouched the fraud charged upon Murray which in both answers he repels in substantially the same language.

To determine the admissibility of Lynch's former testimony, it was necessary to refer to the files in the former case, and this necessity furnishes an additional reason why it was proper for the master to receive and examine those files.

The orator introduced evidence as to what the defendant had testified to in the former case. This testimony was received under objection, and the report is excepted to for error in that regard, on the ground that the parties and issues here and there are different. But this exception requires no discussion. Murray being a party here his admissions made elsewhere, whether in or out of court, were evidence in chief against him; and it is to to be presumed that the evidence was offered and received on the ground that it constituted an admission.

The report is excepted to for claimed error on the part of the master in receiving the testimony of the administrator as to

his charges and as to bills presented him for legal services. The claims in this regard are that these items could not be considered on the question of deficiency of assets, that such deficiency must be determined as of the date of the death of Lynch, since the suit is for the benefit of Lynch's creditors. But we have already shown how these matters were necessary and proper for consideration in order to the determination of the sufficiency of assets left available for the creditors of Lynch.

Propositions made in the defendant's brief and not here particularly noticed are met by the foregoing rulings. Some minor facts have not been mentioned because of their immateriality.

*Decree affirmed and cause remanded.*