GEORGE P. DESHON *vs.* ALICE C. WOOD & another.

Suffolk. March 22, 1888. — December 19, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
· & KNOWLTON, JJ.

*Marriage — Antenuptial Settlement — Insolvent Debtor — Transfer in Fraud
of Creditors — Consideration — Statute of Frauds.*

A man in an insolvent condition, upon entering into an engagement of marriage
and with intent to defraud his creditors, orally promised his intended wife to
give her certain bonds as a marriage settlement, and subsequently, before the
marriage, delivered to her the bonds, upon an understanding 'that upon the
consummation of the marriage they were to become her absolute property; and
the bonds remained in her possession until after they were married. *Held,* that
the transaction amounted to no more than an executory contract to transfer the
bonds upon the marriage, which was without valuable consideration, and void as
against his assignee in insolvency, even if she did not participate in the fraud.
DEVENS, C. ALLEN, & KNOWLTON, JJ., dissenting.

BILL IN EQUITY, under the Pub. Sts c. 151, § 3, by an
assignee in insolvency, to recover certain bonds as transferred
in fraud of creditors. Hearing before *Holmes,* J., who made a
decree that the plaintiff was entitled to the bonds as against
the first-named defendant, subject to the liens of certain claim-
ants, of whom the other defendant was one; and the first-named
defendant appealed to the full court. The material facts appear
in the opinion.

The case was argued at the bar in March, 1888, and after-
wards was submitted on the briefs to all the judges.

*H. D. Hadlock,* (*L. G. Blair,* with him,) for Alice C. Wood.

*F. A. Dearborn,* for the plaintiff.

W. ALLEN, J. · The bill is brought by the assignee in insol-
vency of John F. Wood, to recover possession of one hundred
and eighty bonds of the Exeter Wood Pulp Company, which
belonged to Wood and were delivered by him to the defendant,
Alice C. Wood; and the only question is whether the transfer to
her was valid as against the plaintiff. The evidence upon which
the plaintiff relies tends to prove that, about the first of June,
1884, an engagement of marriage was entered into between
John F. Wood and the defendant Alice C. Wood, then Mrs.

Soule, and at the same time he promised to give her the bonds as a marriage settlement; that he delivered the bonds to her about the middle of the next October, and that they were married on the first day of the next November. Mrs. Wood testified: "It was in June that Mr. Wood proposed marriage and I accepted him. He said he would like to make some marriage settlement on me; . . . that he had some property at Snow's Falls in Maine, and if I became his wife I should have this property as a settlement. About the middle of October I set a day for our marriage, and at that time Mr. Wood gave me the bonds, and said those were the bonds he promised me, to put them away and take care of them, and at the consummation of our marriage they would become my absolute property." Mr. Wood testified that he delivered the bonds to Mrs. Soule about the middle of October, and that he had previously talked with her and told her that when she became his wife she should have them. In answer to a question as to what statement he made when he delivered the bonds to her, in regard to their being hers, he answered, " The understanding that I had was that they were to be hers when she was married, as a settlement." The bonds, thus delivered to Mrs. Soule, remained in her possession until after the marriage. The evidence shows an executory contract to transfer the bonds upon marriage and in consideration of marriage, within the statute of frauds, which provides that no action shall be brought upon an agreement made upon consideration of marriage, unless in writing. As the promise could not be enforced, the performance of it by the husband after marriage would be voluntary, and void against creditors. *Randall* v. *Morgan*, 12 Ves. 67. *Warden* v. *Jones*, 2 DeG. & J. 76. *Caton* v. *Caton*, L. R. 1 Ch. 137; *S. C.* L. R. 2 H. L. 127. *Reade* v. *Livingston*, 3 Johns. Ch. 481. *Lloyd* v. *Fulton*, 91 U. S. 479. See also *Trowell* v. *Shenton*, 8 Ch. D. 318.

The delivery of the bonds to Mrs. Soule before the marriage was under the contract, but not in performance of it. Its purpose was not to change the agreement, but to secure the performance of it upon the marriage. The delivery did not pass the property in the bonds; that was not to pass until the marriage, and then only by force of the agreement; and the utmost effect that can be given to the delivery of the bonds to

Mrs. Soule, and to her retention of them after the marriage, is to treat it as performance of the agreement by the husband after marriage, and it can have no greater effect than a postnuptial settlement.

This view is confirmed by the provisions of the Pub. Sts. c. 147, §§ 26, 27 : "At any time before a marriage the parties may enter into a contract in writing, agreeing and providing that, after the marriage is solemnized, the whole or any designated part of the real or personal estate or any right of action of which either party may be seised or possessed at the time of the marriage, shall remain or become the property of the husband or wife, according to the terms of the contract." The statute requires that the contract shall be recorded, and provides that, if not recorded as required, it shall be void except between the parties, their heirs and personal representatives. The agreement in question was, that after the marriage a designated part of the personal estate of the husband should become the property of the wife, and if it had been in writing and with the same delivery of the bonds to Mrs. Soule as is testified to by the parties, it would have been void as against the plaintiff. *Ingham* v. *White*, 4 Allen, 412. *Butman* v. *Porter*, 100 Mass. 337.

The statute is an enabling statute. At common law, antenuptial agreements to take effect upon marriage, or to be performed during coverture, were extinguished by the marriage. As first enacted in the St. of 1845, c. 208, §§ 1, 2, the statute authorized an antenuptial contract settling property of the wife upon her as her sole and separate property. When re-enacted in 1860, in the Gen. Sts. c. 108, §§ 27, 28, it was extended to include property of either party, as in the Public Statutes. Until the St. of 1867, c. 248, the contract was made wholly void unless recorded. The statute was intended to give legal validity to antenuptial contracts, and it excluded oral contracts. Apart from this statute, courts of equity recognize antenuptial contracts, and enforce them between husband and wife, but there is no authority or principle upon which it can be held that equity will enforce an unrecorded written contract which the statute declares void if not recorded, or a contract which is made valid by the statute only if in writing and recorded.

In *Miller* v. *Goodwin*, 8 Gray, 542, it was said : "A marriage

between parties, who have previously made contracts with each other, which are to be performed presently, or during the marriage, releases or extinguishes such contracts. . . . Such contracts, however, when made in contemplation of marriage, and respecting the property of either of the parties, though released or extinguished at law, are held good in equity, and will be enforced by a court of chancery against the heirs of the party in default." The agreement in that case was by the intended husband to convey land to the wife in consideration of marriage. The husband made a deed to the wife during coverture. Specific performance of the contract was decreed against his heirs. The contract was under seal, and made in 1852, but was not within the St. of 1845, c. 208, as that does not include contracts relating to the property of the husband.

*Sullings* v. *Richmond,* 5 Allen, 187, and *Sullings* v. *Sullings,* 9 Allen, 234, related to an antenuptial contract made prior to the St. of 1845, c. 208, and it was held that such a contract, by which a woman agreed to relinquish her distributive share of her husband's estate, though of no effect in the Probate Court, could be enforced in equity. Such a contract, made in 1858, was enforced in equity against the wife, in *Tarbell* v. *Tarbell,* 10 Allen, 278. *Blackinton* v. *Blackinton,* 110 Mass. 461, related to a contract made in 1858, to be performed after the death of the husband, and decided that it could not bar the wife from her distributive share in the Probate Court. No one of the cases just cited is within the St. of 1845, and in none of them is that statute mentioned.

In *Lawrence* v. *Bartlett,* 2 Allen, 36, a bill in equity by the surviving husband to enforce an antenuptial agreement under the St. of 1845, c. 208, as to the property of the wife, was sustained. *Ingham* v. *White, ubi supra,* was an action after the death of the wife, upon a promissory note given by the defendant to his wife, payable to bearer, and transferred by the wife to the plaintiff. There was an antenuptial contract between the defendant and his wife, which, it was claimed, affected the validity of the note. The court held that the contract was void, because not recorded, as required by the St. of 1845, c. 208.

*Butman* v. *Porter,* 100 Mass. 337, was upon an antenuptial agreement made in 1858, by which the woman was to hold all

her estate to her sole and separate use, and in case she survived her husband was to receive, in lieu of dower and all her rights in his estate, certain specified things, for which the husband, who died before her, made provision for her in his will. A bill in equity was brought to restrain the widow from prosecuting a claim for a distributive share in her husband's estate. The only question reserved was whether the agreement was void because not recorded in accordance with the St. of 1845, c. 208. It was held, that so much of the contract as related to the property of the wife was void because not recorded, but that the particular agreement sought to be enforced related to the property of the husband, and was not within the statute, and not required to be recorded. It was held, however, that the different parts of the agreement were so connected that the invalidity of the one part was sufficient reason for refusing to enforce the other.

*Jenkins* v. *Holt*, 109 Mass. 261, was a bill in equity to enforce an antenuptial contract made in 1861, after the Gen. Sts. c. 108, §§ 27, 28, which included contracts relating to the property of the husband as well as of the wife, took effect. By the agreement, in consideration of covenants of the intended husband, securing a sum of money to the wife after his death and releasing all claim to any share in her estate, she covenanted to accept the same in lieu of dower and any distributive share in his estate. The court say : " The defendant claims however that this contract became void by the neglect to record it as required by the Gen Sts. c. 108, §§ 27, 28. These provisions were first substantially enacted in 1845. They are in derogation of the common law regulating rights of property under the marriage relation, and empower the parties before marriage to enter into a contract that after marriage the real and personal property of either shall be held by them according to its stipulations. A schedule of the property, containing a description sufficient to enable a creditor to distinguish it, is required to be annexed ; and unless recorded within ninety days after the marriage it is declared to be void. The statute applies only to contracts enabling the parties to hold the property specified to their own use after marriage; and requires such to be recorded, for the obvious reason that creditors might otherwise be defrauded. The contract here sought to be enforced relates only to the

rights which the survivor may claim in the estate of the other when the marriage relation is terminated by death. . . . The defendant's objection is founded on a misapplication of the provisions of the statute cited to the contract in question."

It has been assumed that the bonds in question were such that the title would pass by delivery, but that is immaterial. The property in them, legal or beneficial, did not pass to Mrs. Soule until her marriage, and it did not pass for the valuable consideration of marriage, unless under a pre-existing contract. Such a contract between the parties to the marriage will not be recognized, except as authorized by statute. The contract in question was not authorized by the statute, because not in writing, and if in writing it would have been void against the plaintiff because not recorded. The qualified delivery which was made of the bonds would not, at law, excuse the recording required by the statute, and it cannot have the effect in equity to render valid against the plaintiff an oral contract within the statute of frauds, and impliedly prohibited by the statute relating to marriage settlements because not in writing, and which, had it been in writing, would have been expressly declared void by the statute because not recorded. When the promise was made by Mr. Wood, he was, and he has ever since been, indebted to creditors whom the plaintiff represents, and the transfer of the bonds is invalid as against the plaintiff, unless sustained by a valuable consideration. Unless there was a valid antenuptial contract to transfer the bonds in consideration of the marriage, there was no valuable consideration for the transfer.

A majority of the court think that the property was not acquired by Mrs. Wood under a valid antenuptial contract, and that the transfer to her was without consideration and void as against the plaintiff, whether there was or was not an actual intent participated in by her to hinder and defraud creditors.

*Decree affirmed.*

C. ALLEN, J. I am unable to agree with the opinion of a majority of the court upon the legal question involved in the present case. That question is, whether a married woman is entitled to retain against the creditors of her husband personal

property delivered by him to her before marriage, as a transfer to take effect upon marriage and in consideration thereof, he having an intention of defrauding his creditors, but she not participating in such fraudulent intention. I cannot agree that such a transfer is the same thing as an executory contract to transfer the property to her upon or after marriage. It seems to me to be a prior delivery of the property to her, to take effect as a full transfer at the very instant of the marriage. Nothing remains to be done after marriage. The transfer is complete as soon as the marriage is complete.

I do not think that the Pub. Sts. c. 147, §§ 26, 27, apply to a case like this. The material provisions of these sections are as follows: "At any time before a marriage the parties may enter into a contract in writing, agreeing and providing that, after the marriage is solemnized, the whole or any designated part of the real or personal estate or any right of action, of which either party may be seised or possessed at the time of the marriage, shall remain or become the property of the husband or wife, according to the terms of the contract. . . . There shall be annexed to such contract a schedule of the property intended to be affected thereby, . . . and such contract and schedule shall, either before the marriage or within ninety days thereafter, be recorded in the registry of deeds for the county or district in which the husband resides. . . . If the contract is not so recorded, it shall be void except as between the parties thereto and their heirs and personal representatives." The husband was not seised or possessed of the property in controversy at the time of the marriage. At that time the property was hers. The statutes have reference to a contract which is to be carried out at a later period of time.

It seems to me that the course of legislation confirms this view. The St. of 1845, c. 208, §§ 1, 2, provided that the parties to an intended marriage might previously enter into a written contract .that the wife should hold her estate, or any part thereof, independently of her husband. There was nothing in that statute relating to transfers of property from a man to his intended wife. The Gen. Sts. c. 108, §§ 27, 28, followed, which are like the sections of the Public Statutes above referred to. The law thus enacted was a new departure, and by the commissioners'

notes it appears that the provisions of the St. of 1845 were no longer necessary, as by later legislation the property of a woman remained her sole and separate property after marriage, without a contract. But it seemed proper to the commissioners that some statutory provisions should be made, allowing parties before their marriage to make contracts giving to each other such rights in their separate property as might be agreed upon. Such contracts looked to a future execution of them.

The statute by which the property of a woman remained her own after marriage was the St. of 1855, c. 304, § 1, as follows: " The property, both real and personal, which any woman, who may hereafter be married in this Commonwealth, may own at the time of her marriage, . . . shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband, or liable for his debts." This has been continued, with some additions, and is now the law (Gen. Sts. c. 108, § 1; Pub. Sts. c. 147, § 1); and, as it seems to me, it includes a case like the present. At the time of her marriage, at the instant when the defendant became a married woman, the property was hers. The title of the man was fully devested, and she became the owner at that very moment. She was not the owner before the marriage; no act was needed to make her the owner afterwards; but by the marriage she became the owner. There was no possible or conceivable interval of time after the marriage when she was not the owner.

Some analogy, or at least illustration, of this may be found in the law respecting gifts *mortis causa*, in respect to which it has been held by this court: " The title passes by the delivery, defeasible, only in the lifetime of the donor, by revocation. . . . The death of the donor perfects the title, by terminating his right or power of defeasance. . . . The donor at his decease is held to be already devested of his property in the subject of the gift, so that no right or title in it passes to his personal representatives. The donee takes the gift, as it is said, not from the administrator, but against him." *Marshall* v. *Berry*, 13 Allen, 43, 46. " Where there is such a gift and actual delivery, and the expected death of the donor ensues, the gift is complete, and vests the property in the donee presently, without its vesting in or passing through the executor or administrator." *Parish* v.

*Stone*, 14 Pick. 198, 203, 204. The donor cannot revoke the gift by will. Though a will speaks from the testator's death, it does not take effect till too late to work a revocation, because by his death the gift becomes complete. *Jones* v. *Selby*, Prec. Ch. 300. *Nicholas* v. *Adams*, 2 Whart. 17, 23. *Michener* v. *Dale*, 23 Penn. St. 59, 64. 1 Wms. on Exrs. (6th Am. ed.) 696.

Independently of. the statutes, the transfer to the wife would be valid, unless she participated in her husband's fraudulent intent. Even an unfulfilled promise to marry is held to be a valuable consideration; *a fortiori*, marriage itself. *Smith* v. *Allen*, 5 Allen, 454, 458. And the contract, being executed, is not within the statute of frauds. It seems to me, therefore, that the transfer of the bonds to Mrs. Wood must be held to be valid, unless it should be found, upon a consideration of the evidence in the case, that she participated in the intention of Wood to defraud his creditors.

In this dissenting opinion Mr. Justice Devens and Mr. Justice Knowlton concur.