ELLEN T. JONES, ADMX. OF THOMAS T. JONES' ESTATE *v.* MARY A. WILLIAMS ET AL.

January Term, 1920.

Present:    WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed March 20, 1920.

*Equity—Amendments to Conform to Proof—Presumption of Chancellor's Discretion—Fraudulent Conveyances—Voluntary Conveyance—G. L. 3340—Actual Fraud Not Necessary —Effect Upon Creditors' Rights Controlling Factor—Adequate Consideration—Oral Antenuptial Agreement to Pay Wife Not Sufficient Consideration—Statute of Frauds— Marriage Not Part Performance of Oral Antenuptial Agreement to Pay Money—"Null" and "Void" in G. L. 3336— Mortgagee Stands As Purchaser—Bona Fide Purchaser— Want of Full Consideration Not Notice That Conveyance Was Fraudulent.*

1.  The contrary not appearing, it will be presumed that, in permitting an answer to be amended at the hearing on a special master's report so as to make the allegations conform to the proof, the chancellor acted in his discretion.

2.  A voluntary conveyance is fraudulent in law as to existing creditors for whom ample provision has not been made.

3.  The cause of action and the right to maintain a suit under G. L. 3340 is made out, if the conveyance was voluntary, if adequate provision was not then made for the payment of existing creditors, and if ultimately there is a deficiency of assets to pay such creditors.

4.  A voluntary conveyance is fraudulent and void as to existing creditors, although no actual fraud was intended.

5.  In determining whether a voluntary conveyance is fraudulent as to existing creditors, the controlling factor is not the solvency or insolvency of the grantor at the time of the conveyance, but its probable effect upon creditors' rights.

6.  A conveyance by one largely indebted, although property in nominal value more than equal to his indebtedness is retained, is deemed fraudulent as to existing creditors, when in the

ordinary course of events the grantor shortly afterwards becomes insolvent.

7. A debtor having property of a kind subject to fluctuation in value must be circumspect in making gifts, as the law will not permit him to calculate nicely the relation of what will remain to his debts, but requires that he take into account the contingency of depreciation.

8. Where a debtor voluntarily conveyed property to his wife and retained property of an estimated value ample to pay his debts, but the discovery shortly afterwards of hidden defects in the retained property depreciated its value to about half the amount of the debts, he did not, at the time of the conveyance, retain sufficient property to pay his debts.

9. To constitute a valid voluntary conveyance against creditors, it is necessary not only that the consideration should be valuable but also adequate in the eye of the law.

10. The oral antenuptial agreement of the debtor to pay his wife $5,000, not being enforceable because of the statute of frauds, was not sufficient consideration for the conveyance to her as against his creditors, although it was made for the purpose of raising money, and she refused to execute a mortgage therefor unless it was made to her.

11. Marriage was not part performance of the debtor's oral antenuptial agreement to pay his wife $5,000, and did not take it out of the statute of frauds.

12. A voluntary or fraudulent conveyance vests the legal title in the grantee, subject only to be divested by the creditors of the grantor, if they choose to impeach it; the words "null" and "void" in G. L. 3336, being construed to mean voidable only.

13. A mortgagee stands as a purchaser to the extent of his interest in the premises.

14. A *bona fide* purchaser for value without notice from a fraudulent grantee takes a good title as against the creditors of the fraudulent grantor.

15. The mere fact that a mortgagee from a fraudulent grantee had notice that its grantor's title was not founded upon a full pecuniary consideration was not sufficient to put it upon inquiry whether such title was not fraudulent; it having the right to assume that the conveyance was honestly made until some other fact indicating fraud was brought to its knowledge.

APPEAL IN CHANCERY.   Creditor's bill to set aside a conveyance on the ground of fraud.   Heard on a special master's report at the March Term, 1917, Rutland County, *Butler*, Chancellor.   Decree for the plaintiff.   Both parties appealed.   The opinion states the case.

*M. C. Webber* and *J. P. Leamy* for the plaintiff.

The prevailing doctrine in this country is that indebtedness at the time of a voluntary conveyance raises a presumption of fraud.   *Sexton* v. *Wheaton,* 21 U. S. 229; Note, 1 L. R. A. 520; *Brackett* v. *Waite,* 4 Vt. 389; *Thacher* v. *Phinney,* 7 Allen 146; *U. S.* v. *Houseman,* 6 Paige 526.

*Lawrence, Lawrence & Stafford* and *Stickney, Sargent & Skeels* for the defendants.

The fact that Hugh J. was indebted at the time of the conveyance is not alone sufficient to set aside the conveyance as a matter of law.   *Brackett* v. *Waite,* 4 Vt. 389; *Clark* v. *McMahon,* 170 Mass. 91; *Townsend* v. *Windham,* 2 Ves. Sr. 11; *Lush* v. *Wilkinson,* 5 Ves. 384; *Dewey* v. *Long,* 25 Vt. 564; *Wilbur* v. *Nichols,* 61 Vt. 432.

TAYLOR, J.   Hugh J. Williams, formerly of Poultney, died testate July 26, 1909.   In the settlement of his estate claims largely in excess of the visible assets were presented and allowed. Plaintiff, as administratrix of Thomas T. Jones' estate, is one of the principal creditors.   June 1, 1909, Mr. Williams conveyed the house and lot where he resided in the village of Poultney to his wife, the defendant Mary A. Williams.   This bill is brought by the plaintiff in the name of Hugh J. Williams' executor, pursuant to G. L. 3340, to set aside this conveyance as being fraudulent as to creditors.   The Ludlow Savings Bank and Trust Company is made a defendant, being the holder of a mortgage subsequently placed upon the premises by the defendant Mary A. The cause was tried by a special master.   At the hearing on the report both defendants were granted leave to file and filed amended answers.   Without further proceedings the court adjudged that the defendant bank was the innocent holder, without notice of defective title, of the mortgage in question, and

decreed that it was valid as against the plaintiff and other creditors of Hugh J. Williams' estate and the defendant Mary A. Williams, dismissing the bill as to it with costs. It was further decreed that the conveyance to the defendant Mary A. was fraudulent and void ''as to the right of the plaintiff to the extent of the amount reported due her,'' and the deeds effecting the conveyance were set aside and adjudged null and void. The case is here on an appeal from the decree by the defendant Mary A. and by the plaintiff in so far as it was adverse; so both phases of the case are before us for review.

[1] The plaintiff complains of the action of the chancellor in granting the defendants leave to amend their answers at the hearing on the report. But there is nothing in the record to show that this was not a proper exercise of discretion, nor even that it was done against her objection. Besides, the amendments would have no prejudicial effect if they went outside the case as tried before the master. The rights of the parties are to be determined on facts found and reported. It would be discretionary with the chancellor to permit amendments to make the allegations conform to the proof; and that he was so acting will be presumed, the contrary not appearing.

As bearing upon the question whether the conveyance from Hugh J. Williams to his wife was in fraud of creditors, the master makes the following findings: Mr. Williams was the owner in fee of the premises described in the bill of complaint, which he occupied as a homestead until the time of his death. He had for a long time been engaged in the slate business. In February, 1909, he was interested in a quarry opening in Whitehall, New York, and owned a farm in this State on which there were slate quarries, only one or two of which were in operation, other openings having been abandoned. These quarries were operated by lessees. His income from his quarries had averaged about $1,500 a year for the past three years. He was 77 or 78 years of age and was, and for a long time had been, blind. He married the defendant Mary A. Williams, who for the present will be referred to as the defendant, in June, 1906, she being a second wife. Prior to their marriage Mr. Williams agreed, but not in writing, to pay the defendant $5,000 if she would marry him, and in consideration of this promise the marriage was consummated. The defendant did not urge the matter of payment, believing that Mr. Williams would keep his promise and give her

that sum.  About June 1, 1909, Mr. Williams desired to raise some money for use in his business, and in order to secure the funds wished to place a mortgage upon the home place where he and the defendant lived.  The defendant, when requested to sign the mortgage, again called his attention to his antenuptial agreement, and declined to execute the mortgage until he carried out his promise.  Thereupon it was suggested that Mr. Williams convey the home place to the defendant for the purpose of carrying out the agreement, which was assented to.  Accordingly a mortgage was executed to the Rutland Savings Bank to secure a loan to Mr. Williams of $2,500, and the same day he conveyed the home place to the defendant, through a third party, subject to the mortgage.  The master in terms finds that the conveyance was without consideration except that the conveyance of the house to the defendant was made ''for the purpose of carrying out said antenuptial agreement, and for the purpose of raising money as above stated, and for no other purpose whatever.''

Respecting Mr. Williams' solvency after conveying the premises in question to the defendant, the master makes alternative findings, in effect submitting the ultimate question to the court.  Among other things he reports that Mr. Williams retained the farm with the slate quarries, which was encumbered by a mortgage for $5,000.  At the time of the conveyance two of the quarries on the farm were in operation, and the property was thought to be worth several thousand dollars.  Subsequently, and within a few months, the slate vein in these quarries ''brought up against flint rock,'' which made the quarries worthless, or of very much less value.  After Mr. Williams' death the mortgage was foreclosed, and his executor offered the equity of redemption at public auction, but found no bidders.  It was subsequently sold to the defendant for $50.  The master finds that if the quarries were to be given the value that quarry people placed upon them, without knowing their condition with respect to the approach of the slate vein to the flint rock, Mr. Williams was left solvent; but, if they were to be given the value at that time that they were given a few months later, when the flint rock was discovered, he did not retain sufficient property at the time of the conveyance to pay his debts.  The master in effect says that, if the quarries are to be valued as they appeared at the time of the conveyance, Mr. Williams retained sufficient property to pay his debts; but otherwise, if they are to be given

their value at that time as affected by the condition later discovered, Mr. Williams was insolvent at the time of his death. During the administration of his estate the defendant was allowed by the probate court for her support about $1,100. Claims aggregating $3,613.99 are outstanding, not including the expense of administration, and the present assets of the estate are $736.42. These claims were all existing at the time of the conveyance.

[2-4]    The court in effect adjudged on the facts reported that the conveyance was voluntary, and that Mr. Williams did not retain sufficient property to make adequate provision for the satisfaction of pre-existing debts. It is well settled that a voluntary conveyance is fraudulent in law as to existing creditors for whom ample provision has not been made. *Ludlow Savings Bank & Trust Co.* v. *Knight,* 92 Vt. 171, 102 Atl. 51, 2 A. L. R. 1433. The cause of action and the right to maintain a suit under the statute is made out, if the conveyance was voluntary, if adequate provision was not then made for the payment of existing creditors, and if ultimately there is a deficiency of assets to pay the claims of such creditors. As to creditors at the time of the conveyance, the question of the good faith of the parties thereto is not involved. Such a conveyance is fraudulent and void as to them, although no actual fraud was intended. *Farmers' National Bank* v. *Thompson,* 74 Vt. 442, 446, 52 Atl. 961; *McLane, Admr.* v. *Johnson,* 43 Vt. 48, 59. It is very generally held that a voluntary conveyance by one indebted is presumptively fraudulent as against existing creditors, and that the burden is on those who seek to sustain it as a valid transfer to prove that the grantor retained other property or means adequate to pay his debts and discharge his obligations. This, upon the principle that one is presumed to intend the natural consequences of his act, which is to hinder, delay, or defraud his creditors. *Briggs* v. *Sanford,* 219 Mass. 572, 107 N. E. 436; *Kennard* v. *Curran,* 239 Ill. 122, 87 N. E. 913; *Kolb* v. *Mall,* (Iowa), 174 N. W. 226; *Arthur & Boyle* v. *Morrow Bros.,* 131 Md. 59, 101 Atl. 777, L. R. A. 1918 A, 400; *Scharff* v. *McGough,* 205 Mo. 344, 103 S. W. 550; *Miller* v. *Allen* (Mo.) 192 S. W. 967; *Kerker* v. *Levy,* 206 N. Y. 109, 99 N. E. 181; *Merithew* v. *Ellis,* 116 Me. 468, 102 Atl. 301, 2 A. L. R. 1429; *Crary* v. *Kurtz,* 132 Ia. 105, 105 N. W. 590, 109 N. W. 452, 119 A. S. R. 549. For other cases see note 119 A. S. R. 556. However, it is not necessary for the determination of the case at bar to decide as to the burden of proof;

for, assuming that the plaintiff had the burden of showing that Mr. Williams did not retain ample means to meet his present obligations, it must be held that she has discharged that burden.

[5-7]    It is not a mere question of solvency or insolvency at the time of the conveyance.    So far as existing creditors were concerned, Mr. Williams was bound to reserve ample property for the payment of his debts.    Whether the property reserved is what will be deemed ample does not depend entirely upon its amount and value, for the real end to be accomplished is that the conveyance shall not deprive creditors of the means of collecting their debts.    The nature and situation of the property is to be regarded, as well as its amount and value, in view of the facilities that creditors have left for the collection of their debts. *Foster* v. *Foster,* 56 Vt. 540; *Church* v. *Chapin,* 35 Vt. 223.    See note, 2 A. L. R. 1449.    While regard is to be had to the state of things existing at the time of the conveyance (*Wilbur, Admr.* v. *Nichols,* 61 Vt. 432, 18 Atl. 154), the controlling factor is its probable effect upon creditors' rights.    So it is that a conveyance by one largely indebted at the time, although property in nominal value more than equal to his indebtedness is retained, is deemed fraudulent as to existing creditors, when in the ordinary course of events the grantor shortly afterwards becomes insolvent. *Patterson* v. *McKinney,* 97 Ill. 41; Bump on Fraud. Con. (4th ed.), § 254.    Moreover, the nature of the property retained is important.    A debtor having property of a kind subject to fluctuation in value must be circumspect in making gifts; the law will not permit him to calculate nicely the relation of what will remain to his debts, but requires that he take into account the contingency of depreciation.    Bigelow on Fraud, Con. 228. Manifestly, fluctuations in value of mines or quarries that are liable at any time to be exhausted are reasonably to be anticipated and the rights of creditors should not be made to depend upon the failure of their debtor to take so obvious a contingency into account in making gifts of his property.

[8]    We have no doubt that the court was right in the conclusion reached as to the inadequacy in law of the property retained by Mr. Williams out of which to pay his debts.    His assets and liabilities were the same as they were at the time of his death less than two months thereafter.    The actual value of the farm remained unchanged.    The depreciation from its estimated value was due to a condition then existing, though undiscovered

—a contingency which should have been taken into account at the time of the conveyance. Finally, the property retained was heavily mortgaged. There was no loss of an accidental kind, as in *Brackett* v. *Waite,* 4 Vt. 389, but in the ordinary course of events and within a brief space of time it is found that the property retained was actually worth only about half the amount of the debts for which provision should have been made. In view of these facts, there can be no doubt that Mr. Williams' provision for the payment of his debts at the time of the conveyance was not in law sufficient to save the conveyance from the attack of existing creditors.

[9, 10] Respecting the consideration that will save a conveyance from the charge of being voluntary as to existing creditors, the ultimate question is as to its adequacy. Varying expressions will be found in the cases, but they all import the same thing. To constitute a valid conveyance against creditors it is necessary not only that the consideration should be valuable but also adequate in the eye of the law. *Durkee* v. *Mahoney,* 1 Aik. 116. It follows that a consideration that may be technically "valuable" as between the parties may not be deemed valuable as against existing creditors. See *Sexton* v. *Wheaton,* 8 Wheat. 229, 5 L. ed. 603. Thus in *Church* v. *Chapin,* 35 Vt. 223, the conveyance by a debtor of all his attachable property for half its value was held to be void as to existing creditors on the ground of inadequacy of consideration. In this view of the sufficiency of consideration the conveyance in question was in the circumstances voluntary. While the consideration was, as some courts would say, meritorious and good as between the parties, it was in law inadequate as against creditors who were injured thereby. As a postnuptial settlement in discharge of the antenuptial agreement the conveyance, as to creditors, was manifestly voluntary. The promise to pay $5,000 in consideration of marriage, not being in writing, was not enforceable because of the statute of frauds (G. L. 1876), and was not sufficient consideration to support the conveyance after marriage, when the rights of intervening creditors would be affected thereby. As the promise could not be enforced, the performance of it by the husband after marriage would be voluntary and subject the conveyance to that infirmity when attacked as in fraud of existing creditors. The cases are practically of one accord on this question, and we content ourselves with citing only a few of the many

authorities supporting this holding.   *Keady* v. *White*, 168 Ill.
76, 48 N. E. 314; *Deshon* v. *Wood*, 148 Mass. 132, 19 N. E. 1, 1
L. R. A. 518; *Lloyd* v. *Fulton*, 91 U. S. 479, 23 L. ed. 363; *Barnes*
v. *Black*, 193 Pa. St. 447, 44 Atl. 550, 74 A. S. R. 694; *Man-
ning* v. *Riley*, 52 N. J..Eq. 39, 27 Atl. 810; *Flory* v. *Houck*, 186
Pa. St. 263, 40 Atl. 482.   See also May on Fraud. Con. 291;
Bump on Fraud. Con., § 276; Bigelow on Fraud. Con., p. 559;
12 R. C. L. 522; note, 90 A. S. R. 497, 510.   Nor does the
statement in addition that the conveyance was made "for the
purpose of raising money" as elsewhere stated in the findings
make the conveyance any less voluntary as to creditors.   The
conveyance of the equity of redemption in the premises on the
sole consideration that the defendant join in the execution of the
mortgage would be upon a consideration inadequate as to them.

[11]   Defendant's claim that the marriage was a part per-
formance of the contract and took it out of the statute of frauds
is fully answered by the authorities cited above.   Speaking ·to
this point, Lord Cranworth said in *Caton* v. *Caton*, L. R. 1 Ch.
137:  "That marriage in itself is no part performance within
the rule of equity is certain.   Marriage is necessary in order
to bring a case within the statute, and to hold that it also takes
the case out of the statute would be a palpable absurdity."   To
sustain the defendant's claim would put an end to the statute,
for under it every parol contract followed by marriage would be
binding.   Additional reasons for the rule that marriage is not
such a part performance as equity will consider sufficient to
take the case out of the statute are well stated in *Manning* v.
*Riley, supra,* where an extended review of the authorities will
be found.   The defendant relies upon *Richardson* v. *Richardson,*
148 Ill..563, 36 N. E. 608, 26 L. R. A. 305, in support of her
claim; but the case is clearly against her.   *Clark* v. *McMahon,*
·170 Mass. 91, 48 N. E. 939, is also relied upon; but in that case
the conveyance was before marriage, and so not voluntary, and
actual intent to defraud creditors was not found.

Failure to distinguish between cases involving fraudulent
conveyances upon consideration and conveyances without ade-
quate consideration, and, in the case of voluntary conveyances,
between those that rest upon a legal inference of fraud and those
where an actual fraudulent intent is shown, is a source of con-
fusion and accounts for some of the divergent claims of counsel
in this case.   These distinctions are clearly pointed out in *Wilson*

v. *Spear*, 68 Vt. 145, 148, 34 Atl. 429. See also *Fair Haven Marble Co.* v. *Owens*, 69 Vt. 246, 37 Atl. 749, and comment by TAFT, J., in *Corey* v. *Morrill*, 71 Vt. 51, 56, 42 Atl. 976. The plaintiff falls into this error in claiming on the authority of *Lynch's Admr.* v. *Murray*, 86 Vt. 1, 83 Atl. 746, that the question of Mr. Williams' solvency at the time of the conveyance is immaterial. That was a case of actual intent to defraud, where the elements and consequences are different than in a case of constructive fraud like the one before us. It should be observed that the statute under which both suits were brought (G. L. 3336) contemplates fraudulent conveyances of both classes; but mere deficiency of assets, not relating back to the time of the conveyance, would not bring a case like the one at bar within the purview of the statute.

As affecting the rights of the Ludlow Savings Bank and Trust Company in the premises the master found that, for the purpose of procuring money to pay off the mortgage to the Rutland Savings Bank resting upon the premises, and for the purpose of securing all other indebtedness then or thereafter owed by her to the defendant bank, on November 9, 1911, Mary A. Williams executed a mortgage thereon to the defendant, conditioned for the payment of a note of $2,500 given for money then advanced to her and for the payment of all other indebtedness then or thereafter due from her to the bank. The money advanced, at the request of Mrs. Williams, passed directly from the defendant to the Rutland Savings Bank and was used to take up Mr. Williams' note held by it and secured by the mortgage of June 1, 1909. The mortgage was thereupon discharged. Subsequently Mrs. Williams borrowed $5,425 of the defendant, giving her note therefor, with which she purchased the farm and quarry property already referred to, the title in the meantime having vested in the mortgagees by foreclosure, and gave the defendant, as additional security, a mortgage on this real estate. Before making the loan and taking the mortgage on the property in question the defendant procured the services of a competent attorney to examine the title, who reported that the record title was in Mrs. Williams. The defendant also inquired of the executor of Mr. Williams whether the estate had any claim upon the property and was informed by him that it did not. There is due the defendant upon the first note $2,605.84 as of September 12, 1916, and upon the other note $5,281.72, as of the same date.

[12]   It is contended by the plaintiff that, as the convey-
ance to Mrs. Williams was fraudulent, she had no title and could
not give a valid lien on the property.   The argument proceeds
upon the theory that the deed to her was absolutely void.   But
such is not the case.   A voluntary or a fraudulent conveyance is
valid between the parties, and in fact as to the whole world,
except those within the protection of the statute; thus the words
''null'' and ''void'' are construed to mean voidable only.   There-
fore such conveyances vest the legal title in the grantee, subject
only to be divested by the creditors of the grantor, if they choose
to impeach it.   *Tudor* v. *Tudor*, 80 Vt. 220, 67 Atl. 539, 130 A.
S. R. 977; *Carpenter* v. *McLure*, 39 Vt. 9, 91 A. D. 370; 12
R. C. L. 473.

[13-15]   The bank claims to hold under its mortgage as a
*bona fide* purchaser for value.   No question is or can be made
but that a mortagee stands as a purchaser to the extent of his
interest in the premises.   While some of the earlier decisions in
this country were to the contrary, it is now the settled doctrine
that a *bona fide* purchaser for value without notice from a
fraudulent grantee takes a good title as against the creditors of
the fraudulent grantor.   *Zoeller* v. *Riley*, 100 N. Y. 102, 2 N. E.
388, 53 A. R. 157; *Mansfield* v. *Dyer*, 131 Mass. 200.   See 12
R. C. L. 607, where the leading cases are collected.   The facts
reported support the chancellor's conclusion that the defendant
is the innocent—that is, *bona fide*—holder of the mortgage with-
out notice of defective title.   Plaintiff does not claim that the
bank had any knowledge of the defect in Mrs. Williams' title,
but relies solely upon the claim of constructive notice of such
defect.   She argues that the consideration named in the deeds
passing the title from Mr. Williams to his wife being nominal
would be notice of fraud, where the estate was insolvent.   But,
so far as appears, the defendant did not have notice that Mr.
Williams' estate was insolvent, and nothing is shown sufficient
to put it upon inquiry in this regard.   The mere fact that the
defendant had notice that the title of its grantor was not founded
upon a full pecuniary consideration was not sufficient to put it
upon inquiry whether such title was not fraudulent.   On the
contrary, the defendant had a right to act upon the presumption
that the conveyance was honestly made until some other fact was
brought to its knowledge indicating that it was fraudulent.
Bump on Fraud. Con. (2nd ed.) 485; *McKee* v. *West*, 141 Ala.

531, 37 South. 740, 109 A. S. R. 54; *Norman* v. *Towne,* 130 Mass. 52.   There being nothing in the record from which notice, either actual or constructive, should be found, the defendant has all the rights of a *bona fide* purchaser for value under its mortgage.   The extent of its interest in the premises is not now before us.   This disposition of the question makes it unnecessary to consider the claims advanced as to subrogation.

The result is that neither appellant prevails on the questions argued and the decree should be affirmed.   However, certain modifications of the decree are now suggested, which we find should be made.   Accordingly, the decree is altered to read as follows:

It is ordered, adjudged and decreed:

1.   The death of William H. Hughes, Executor, being suggested, that Walter S. Fenton, administrator with will annexed, has leave to enter.

2.   That the motions of the defendants for leave to file amended answers are severally granted.

3.   That the mortgage executed by Mary A. Williams on the premises described in the bill of complaint to secure the debt to the Ludlow Savings Bank and Trust Company set forth in the special master's report is a valid and existing mortgage thereon as against the Executor of Hugh J. Williams, his successors, and their assigns, the defendant Mary A. Williams, and the creditors of the said Hugh, and that as to said Bank and Trust Company the bill is dismissed, with costs against the plaintiff; but this decree is not to affect any right the parties may have by appropriate proceedings to enforce the marshalling of securities.

4.   That the deed from Hugh J. Williams to William H. Lloyd, and the deed from said Lloyd to Mary A. Williams, referred to in the pleadings and master's report, are null and void as to creditors of said Hugh who were such at the time said conveyances were made, to the extent of the deficiency of the assets of the estate of said Hugh to pay the debts proved and allowed against his estate that are owing such creditors, and that Walter S. Fenton, administrator with will annexed of said Hugh's estate, has the power of sale and the right to convey, to the same effect as if the conveyance to Mary A. Williams had not been made, so much of the real estate so conveyed by the said Hugh as shall be necessary to make up such deficiency; that all necessary and proper orders may be made and proceedings

had for carrying this decree into effect by such sale, unless the defendant Mary A. Williams herself within a time to be fixed by the chancellor shall make up such deficiency by paying the amount thereof to said administrator; and that in the event of such sale by the administrator, the defendant Mary A. Williams shall make proper and effectual conveyance of the title remaining in her of the portion so bargained and sold; but this decree is not intended to affect the homestead or other rights, if any, in preference to creditors, which the said Mary A. Williams, as widow of the said Hugh J. Williams, has in the premises.   Let the plaintiff recover costs of the defendant Mary A. Williams.   Further, let the cause be retained in the court of chancery for effectuating all matters embraced in the premises.

*As altered, the decree is affirmed, and the cause remanded.*