NATIONAL BANK OF ANACONDA, APPELLANT, v. YEGEN ET AL., RESPONDENTS.

(No. 6,334.)

(Submitted October 6, 1928. Decided November 9, 1928.)

[271 Pac. 612.]

Mr. *J. B. C. McKnight* and Messrs. *Johnston, Coleman & Johnston*, for Appellant, submitted a brief; Mr. *W. M. Johnston* argued the cause orally.

*Messrs. Hurd, Rhoades, Hall & McCabe,* for Respondents, submitted a brief; *Mr. E. J. McCabe* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

This action was brought for the purpose of having set aside a conveyance of certain real property made by the defendant Laura B. Yegen to her daughter, Virginia Yegen (now Virginia Yegen O'Meara), on March 4, 1924, and to subject the same to the satisfaction of a judgment for $8,230.72 . and interest thereon, rendered against the defendant Laura B. Yegen and in favor of the plaintiff on December 30, 1924. The lands involved consist of four separate parcels:

(1) A tract of about twenty acres, described by metes and bounds and designated as the westerly half of lot 6 in section 2, township 1 south, range 26 east.

(2) An undivided interest in the north half of the southwest quarter, the west half of the southeast quarter of the southwest quarter, and lot 5 of section 2, township 1 south, range 26 east.

(3) All of block 14 of the Highland addition to the city of Billings.

(4) Lots 13, 14 and 15 in block 139 of the original town of Billings.

The complaint alleges that on November 25, 1924, the plaintiff commenced its action against the defendant Laura B. Yegen in the district court of Deer Lodge county to recover judgment on a promissory note given by her to the predecessor in interest of plaintiff on December 10, 1923, for the sum of $7,450, payable six months after date, with interest at six per cent per annum, which had been duly assigned to

it, and that such proceedings were had in said action that on December 30, 1924, a judgment of said court was duly given and made in favor of the plaintiff and against the defendant therein for the sum of $8,230.72, which was duly docketed by the clerk of the court, that the plaintiff is the owner of said judgment, and that no part of the same has been paid.

It is further alleged that on March 4, 1924, and for a long time prior thereto, the predecessor in interest of the plaintiff was the owner and holder of said promissory note, and that the defendant Laura B. Yegen was then indebted to plaintiff on account of said promissory note, and that while she was so indebted to the predecessor in interest of the plaintiff she did, for the purpose of and with the intent to hinder, delay, defeat and defraud plaintiff of the amount so owing by her to the predecessor in interest of the plaintiff, wrongfully and fraudulently execute a warranty deed for the above-mentioned premises, conveying the same to Virginia Yegen, her daughter, which deed was delivered to the grantee and recorded in the office of the county clerk of Yellowstone county, Montana; that no consideration whatever was paid therefor; that at the time of the conveyance said property was of a reasonable value in excess of the amount of plaintiff's judgment against the defendant Laura B. Yegen, who has been at all times since the owner thereof, although title thereto stands upon the records in the name of Virginia Yegen.

It is further alleged that subsequent to the date of said judgment, and prior to September 11, 1925, a transcript thereof was duly docketed in the office of the clerk of the district court of Yellowstone county; that on September 11, 1925, an execution upon said judgment was duly issued out of the district court of Deer Lodge county, under and by virtue of which the sheriff of Yellowstone county levied upon the above-mentioned real property as the property of the defendant Laura B. Yegen, standing on the records in the name of the defendant Virginia Yegen.

It is further alleged that the defendant Laura B. Yegen has no property, other than her interest in said real property above described, out of which the plaintiff's judgment may be satisfied, in whole or in part; that the defendant Virginia Yegen, at the time she accepted and received said deed, knew that the same was executed and delivered to her by the defendant Laura B. Yegen with the fraudulent purpose and intent of the defendant Laura B. Yegen to hinder, delay, defeat and defraud the plaintiff of the amount due to it on account of said promissory note.

The answer of the defendants admitted the execution and delivery of the deed by the defendant Mrs. Yegen to her daughter, Virginia, but put in issue all the other allegations of the complaint. The cause was brought to trial before the court without a jury, and resulted in findings and a decree in favor of the defendants. The plaintiff has appealed, and in its brief has specified as error the refusal of the court to adopt each of its requested findings of fact and conclusions of law, as well as the action of the court in making its findings of fact and conclusions of law in favor of the defendants. In fine, the assignments of error raise but the single query whether the evidence preponderates against the court's findings and the decree entered in accordance therewith.

In an equity case such as this, the burden is upon the one who assails the findings of the trial court to show that the evidence preponderates against them, and, if he is unsuccessful in this, they will not be disturbed. (*Gravelin* v. *Porier*, 77 Mont. 260, 250 Pac. 823; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Scott* v. *Prescott,* 69 Mont. 540, 223 Pac. 490.)

The record shows without dispute that the lands described in paragraphs 2 and 3 above were purchased by Christian Yegen, husband of the defendant Mrs. Yegen, more than twenty years before the matters at issue in this action arose, and that by proper conveyance the title thereto was placed of record in the name of Mrs. Yegen under an express oral

agreement that she should hold said lands for their children, for the purpose of providing a competency for them, independent of and distinct from her husband's property. All the children were advised of and understood this arrangement, and the conveyance of the lands just mentioned was made on March 4, 1924, to Virginia for the benefit of all the children, without any money consideration, but to carry into effect the agreement made when the title thereto was placed in Mrs. Yegen's name.

The action against Mrs. Yegen, upon which judgment was rendered against her in Deer Lodge county, was not commenced until November 25, 1924, and no attempt was made to fix a lien upon the above lands under the judgment rendered therein or otherwise, until the eleventh day of September, 1925, or about a year and a half subsequent to the conveyance which it is sought to have set aside.

Under these circumstances the moral obligation assumed by Mrs. Yegen when she took legal title to the lands in her own name for the benefit of her children, which obligation she subsequently discharged by conveying the property to her daughter Virginia for the benefit of all the children, was sufficient to protect such conveyance from the attack of creditors on the ground that the same was without consideration and fraudulent, where the creditors had made no effort to subject the property to the payment of their claims by the imposition of a lien thereon prior to the conveyance. (*Paris Grocer Co.* v. *Burks,* 56 Tex. Civ. App. 223, 120 S. W. 552; *Clark's Admr., etc.,* v. *Rucker,* 7 B. Mon. (Ky.) 583; *Bicocchi* v. *Casey-Swasey Co.,* 91 Tex. 259, 66 Am. St. Rep. 875, 42 S. W. 963; *Powell* v. *Ivey,* 88 N. C. 256; *Silvers* v. *Potter,* 48 N. J. Eq. 539, 22 Atl. 584; *First Nat. Bank of Appleton* v. *Bertschy,* 52 Wis. 438, 9 N. W. 534.) In the last-mentioned case the court said: "Where a conveyance is made by a debtor of property to which he has the legal title, but as to which another has an equitable claim, though such equity is not

enforceable in any court, such debtor may recognize such equitable claim, and convey the estate to the claimant, without being guilty of any fraud as against his other creditors.''

For the reasons above set forth, and in the light of the authorities cited, we shall dismiss from further consideration the conveyance of the lands described in paragraphs 2 and 3 above, and hold that as to them the conveyance should not be disturbed.

The situation with reference to the twenty-acre tract described as the west half of lot 6, in township 1 south, range 26 east, and lots 13, 14 and 15 in block 139 of the original town of Billings, mentioned in paragraphs 1 and 4, is wholly different from that of the lands we have just considered. These parcels were acquired by Mrs. Yegen in her own right, without any assistance from her husband or anyone else. The substance of her testimony in reference to the manner in which she became possessed of this property, and in which she held the title, is that she bought it for the children, and that they so understood it, before and at the time she bought it. Such statements were purely voluntary, and did not impose upon her any legal or moral obligation, which would prevent her from disposing of the property to such persons, at such times, upon such terms, and for such considerations as she might select, and were not sufficient to protect her voluntary conveyance thereof to her daughter Virginia from attack by her then existing creditors, on the ground that it was in fraud of their rights. As stated by counsel for appellant in their brief: ''If it were otherwise, then all one would have to do, to prevent his creditors from taking his real property in payment of his just debts, would be to make a statement to his children at the time of its purchase that he was buying the property for them.''

It is the rule in this state that a creditor, seeking to set aside a transfer as fraudulent, must allege and prove that the debtor was insolvent at the time he made the convey-

ance, and that he had no other property out of which his claim could be satisfied or enforced by legal process. (*Hale v. Belgrade Co., Ltd.,* 75 Mont. 99, 242 Pac. 425; *Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618.) In this case the court, from the evidence, found as a fact that ██ the plaintiff failed to prove that, at the time the conveyance was made from Mrs. Yegen to her daughter Virginia, she was insolvent, or that she did not have other property adequate in value to discharge the judgment against her, if plaintiff had sought to subject the same to that purpose. It is now necessary to consider this finding, in the light of the evidence introduced at the trial, to determine whether it can be sustained under the rule above set forth.

The only property, aside from that transferred by the deed in question, which Mrs. Yegen owned at the date of the execution of the deed to her daughter Virginia, was forty shares of the capital stock of the Anaconda National Bank, the predecessor in interest of the plaintiff. A great deal of testimony was introduced at the trial in an effort to fix and determine the value of this stock. We have endeavored with care to follow out the ramifications of this testimony, but do not consider it necessary to undertake the task of attempting to analyze and harmonize it, since the highest value claimed for it by counsel for defendants in their brief is $150 per share, or $6,000 for the forty shares. Without assenting to the conclusion that the testimony justifies the claim of counsel, we may accept that valuation for our present purpose.

The next step necessary to be taken is to ascertain the amount of Mrs. Yegen's indebtedness to the predecessor in interest of the plaintiff at the date of the transfer in question. This indebtedness was evidenced by a note for $7,450, dated December 10, 1923, due six months after date, bearing interest at the rate of six per cent per annum. The evidence showed that this note was the renewal of a note given to the

predecessor of plaintiff several years before that time, which had been periodically renewed, and that it was the note which was the basis of the judgment rendered against Mrs. Yegen on December 30, 1924, in the district court of Deer Lodge county. Mrs. Yegen contended, and at the trial was permitted to testify, over objection, that this note was given by her to the bank in connection with the issuance in her name of certificates for fifty shares of the capital stock of the Anaconda National Bank; that it was "not a promissory note, but an accommodation note, not obligating any property that I hold for myself or the children, and this note was to be paid for in dividends, and the stock would be delivered to me in ten years, if it was paid for at that time, or if the bank needed all or a part of the stock at any time, I was to release it and be free of all obligations, and they could take all or a part of the stock at any time they required." This fifty shares of stock, prior to the time it was issued in the name of Mrs. Yegen, stood in the name of one Edwards, who had been connected with the bank in an official capacity, but apparently had not been paid for. Edwards severed his connection with the bank, and it was arranged to have his stock transferred to Mrs. Yegen, and this was accomplished by having her give the original note above referred to. This note was indorsed and its payment secured by Yegen Bros., a partnership comprised of Christian Yegen and Peter Yegen. In one part of her testimony Mrs. Yegen testified that she never saw this stock. She further testified that five shares of this stock were absolutely transferred to her husband, Christian Yegen, and a like amount to Peter Yegen, and in connection with this transfer she testified that she received a telegram to transfer (the stock) and get it off in the mail and send it to Anaconda. The stock certificate book of the bank, produced in evidence, showed that two certificates of stock were issued to and receipted for by Mrs. Yegen on November 6, 1921, one for forty shares of stock and one for ten shares;

that the latter certificate was returned to the bank, indorsed by Mrs. Yegen, and that two certificates were issued in lieu thereof, one for five shares to Christian Yegen, and one for a like amount to Peter Yegen, on February 3, 1922. The cashier of the bank testified that neither the ten-share certificate nor the forty-share certificate issued to Mrs. Yegen was ever held by the bank as collateral security for any purpose; that he did not know what was done with either of them, and never saw either of them until the ten-share certificate was returned by Mrs. Yegen for cancellation and reissuance as above related. Christian Yegen testified that the certificates for shares of stock were never delivered to Mrs. Yegen, and were put in a safety deposit box in Butte. Mrs. Yegen was not asked, and did not undertake to explain, why she did not appear in the action brought against her on this note in the district court of Deer Lodge county and make the defense therein which she sought to inject into this suit. The record shows that judgment was taken against her therein by default.

From the foregoing circumstances, and in view of all of the evidence introduced in the case, we are impelled to the conclusion that Mrs. Yegen was mistaken in her contention that there was never to be any personal liability on her part on account of this note, and that the same was to be paid only out of the dividends from the stock. We conclude that the same was a valid and subsisting obligation upon her part on March 4, 1924, when she executed and delivered the deed in question to her daughter Virginia, and that at that time she was justly and legally indebted thereon in the amount of said promissory note, to-wit, $7,450, with interest thereon at six per cent per annum from December 10, 1923.

It is thus seen that, after the conveyance of the real property mentioned in paragraphs 1 and 4, the defendant Mrs. Yegen did not have property accessible to legal process to satisfy the legal demands of the plaintiff against her. In

the eyes of the law, one who is so situated is regarded as insolvent. (*Stadler* v. *First National Bank*, 22 Mont. 190, 74 Am. St. Rep. 582, 56 Pac. 111; *Smith* v. *Collins*, 94 Ala. 394, 10 South. 334; *Mitchell* v. *Bradstreet Co.*, 116 Mo. 226, 38 Am. St. Rep. 592, 20 L. R. A. 138, 22 S. W. 358, 724; *Walton* v. *First National Bank*, 13 Colo. 265, 16 Am. St. Rep. 200, 5 L. R. A. 765, 22 Pac. 440; *Lamberton* v. *Windom*, 18 Minn. 506 [Gil. 455].) It follows, necessarily, that the court was in error in its finding to the effect that the insolvency of the defendant Mrs. Yegen was not established, and that finding must be rejected as being against the preponderance of the evidence.

It is not contended that the defendant Virginia Yegen paid any consideration to her mother for the transfer of the property to her. In fact, the record is replete with admissions that she did not. The conveyance was, therefore, purely voluntary.

By the provisions of section 8603, Revised Codes of 1921, a fraudulent conveyance is void as to the creditors of the grantor. Where, as in the instant case, one makes a voluntary conveyance of his property without retaining sufficient to satisfy the legal demands of his creditors, it is not necessary to show the existence of an actual fraudulent intent, since by the law it is presumed that a person intends the ordinary consequences of his voluntary act. (Subd. 3, sec. 10606, Rev. Codes 1921; *Ogden State Bank* v. *Barker*, 12 Utah, 13, 40 Pac. 765; *Jones* v. *Williams*, 94 Vt. 175, 109 Atl. 803; 22 C. J. 502.)

Counsel for respondents seem to contend that, because of the provisions of section 8606, Revised Codes of 1921, to the effect that the question of fraudulent intent is one of fact and not of law, and that a transfer cannot be adjudged fraudulent solely on the ground that it was not made for a valuable consideration, the mere fact of the conveyance without consideration, with the resultant effect of leaving the grantor insolvent and without property sufficient to meet the

plaintiff's demands, is not proof enough to establish the fact of fraudulent intent.

As it is heretofore pointed out, Mrs. Yegen must be deemed to have intended the natural and inevitable consequences of her act in making the conveyance, and that the result was to hinder, delay and defraud the plaintiff in the collection of its judgment against her, and therefore fraudulent in fact. (Bump on Fraudulent Conveyances, pp. 22 and 272.) The ▮ rule of law is that one must be just before he can be permitted to be generous. If one undertakes to reverse the rule, and be generous before he is just, the law interferes, and says his act is fraudulent as to those to whom he is not just, even though the act may involve no moral turpitude.

Virginia Yegen being a voluntary transferee, it is immaterial whether she knew of the facts and circumstances from which fraud is imputed to her grantor. This, of course, is on the theory that she parted with nothing of value, that she got something for nothing, and became a sort of a depositary of the property for her grantor, which she undertakes to hold so as to defeat the rights of the creditor, and, by so doing, makes herself a party to the fraud. (*Graham Grocery Co.* v. *Chase*, 75 W. Va. 775, 17 A. L. R. 723, 84 S. E. 785; Waite on Fraudulent Conveyances, 3d ed., secs. 200–208.)

It is not necessary to make reference to further authorities to show that, so far as it affected the real property mentioned in paragraphs 1 and 4, above, being the twenty acres described by metes and bounds and designated as the westerly half of lot 6 in section 2, township 1 south, range 26 east, and lots 13, 14 and 15 in block 139 of the original town of Billings, the conveyance from Laura B. Yegen to Virginia Yegen will not withstand the attack made upon it by the plaintiff, and should be set aside as being in fraud of its rights.

The cause is remanded to the district court of Yellowstone county, with direction to modify the judgment heretofore

entered, in accordance with the views above expressed. The plaintiff will recover its costs from the defendants.

*Remanded for modification.*

Associate Justices Matthews and Galen concur.

Mr. Chief Justice Callaway and Mr. Justice Myers not sitting.